# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF OHIO

# EASTERN DIVISION

# (YOUNGSTOWN, OHIO)

| | | |
|---|---|---|
| **WILLIAM SPITHALER, ET AL.,** | : | |
| **PLAINTIFFS,** | : | **CASE NO. 4:18-CV-01361** |
| **VS.** | : | **JUDGE BENITA Y. PEARSON** |
| **RANDY SMITH, ET AL.,** | : | **MAG. JUDGE GEORGE J. LIMBERT** |
| **DEFENDANTS.** | : | |

---

# Affidavit

---

State of Ohio, County of Trumbull

My current legal name is Bradley J Perkins, and my current occupation is the Executive Director of the Ohio Forestry Association, Inc. (OFA) I am presently 62 years old, and my current address of residence is 7870 Meadow Drive, Nashport, Ohio 43830.

My relationship with the Plaintiff, William Spithaler, is that Mr. Spithaler is a logger, timber buyer, and firewood processor in Trumbull County, and I am the Executive Director of the Ohio Forestry Association, Inc., which advocates for people and businesses, like Mr. Spithaler, that are in the forest products industry in Ohio. (see Example 1). Mr. Spithaler and I have communicated for nearly two years as we collectively work to address what appears to be inequities in the special hauling permit system being used in Trumbull County for posted, weight-limited roads.

1. I spoke to members of the Northeast Ohio Loggers Chapter on April 12, 2017. One of the things I talked about was road bonding concerns in Portage County, Ohio.

2. In May of 2017, I was contacted by members of the forest products industry in NE Ohio about concerns they had with road use permits in Trumbull County, Ohio.

3. On June 7, 2017, myself and John Dorka, former Executive Director of OFA and part time employee of OFA and manager of the Ohio Master Logging Company program at that time on

June 7, 2017, met with members of the forest products industry at the home of Donnie Schmucker from Trumbull County Hardwoods, to discuss road use permit concerns in Trumbull County. The concern set forth by this group of industry representatives was the cost difference between what log and lumber haulers were being required to pay to use posted, weight-limited roads, and what businesses trucking other commodities of the same weight, with similar trucks, were being required to pay to operate on the same roads.

4. At the above-mentioned June 7, 2017 meeting referenced in paragraph 3, I told the industry representatives at the meeting that I would contact the Trumbull County Engineers office to begin discussions with them about their road use permit process.

5. On July 14, 2017 I obtained a copy of Trumbull County's "application for Special Hauling Permit" so that I could review the requirements. (see Example 2)

6. On July 20, 2017, I met with Jack Simon of the Trumbull County Engineers office, Trumbull County Commissioner Fuda, and Mark Japunchka (spelling) from the Trumbull County Sheriff's office. Mark operates the portable weight scales for Trumbull County.

   a. I started off by telling them that I don't want their roads damaged, but that I want to see all trucks operating on a level playing field.
   b. I told them that the road doesn't know the difference between what a truck, or any other vehicle is hauling. Trucks are trucks and weight is weight.
   c. I asked them if trucks hauling traditional agricultural commodities like corn and soybeans, would be treated the same as log trucks. They did not answer the question directly, although they did acknowledge that logging is an agricultural activity.
   d. I asked if garbage trucks and school buses would have to get the same permits as log trucks to haul on load posted roads, since some of the roads have been posted with 5 or 10 ton load limits. Garbage trucks and most school buses are heavier than this. Again, I was not given good, direct answers to these questions. In fact, Mark got very defensive in his responses concerning my questions as to whether or not he would stop and weigh school buses on a 5 or 10 ton posted road.
   e. I asked how they were going to implement the permit process. I asked if they were going to go door-to-door and make all farmers with crops on load limited roads get a permit, or how they were going to talk to loggers and sawmills and others that they felt needed a permit. Their answer was that they were going to rely on people to get permits that they needed, or, if they stopped and weighed someone, and they were over the posted weight limit, they would tell them they had to get the proper permit. This response leaves the administration of permits totally in the hands of the person deciding what vehicles are to be stopped and weighed.
   f. During this meeting, I was informed that the Trumbull County Engineers office purchased the portable weigh scales and reimburses the Trumbull County Sheriff's office for the wages of the person (Mark Japunchka) that operates them.

7. On August 2, 2017, I sent an email to Jack Simon of the Trumbull County Engineers office outlining several thoughts, questions and concerns that I had with their permit system and asked for his feedback. (see Example 3)

8. On August 3, 2017, I received an email from Jack Simon of the Trumbull County Engineers office indicating in red font his responses to the email referenced in paragraph 7 and Example 3. (see Example 4)

9. I was not convinced from my meeting on July 20, 2017 or my responses from Jack Simon to my email sent on August 2, 2017 referenced in paragraph 8 and Example 4, that trucks hauling logs and lumber were going to be treated the same as trucks hauling other commodities on the same roads, so I arranged a meeting, with the Trumbull County Engineer, Randy Smith, other representatives from his office, members of OFA, a representative from the logging community, a member of the Ohio Farm Bureau Federation's legal team, and a Director of State Policy for the Ohio Farm Bureau Federation, for October 11, 2017. (see Example 5.)

10. On October 10, 2017, I sent an email to the non-Trumbull County Engineer office representatives that would be attending the October 11, 2017 meeting discussed in paragraph 9, laying out a series of discussion points I wanted them to consider prior to the meeting. (see Example 6.)

11. The group mentioned in paragraph 9, and noted by name in Example 5, met in Trumbull County on October 11, 2017 in Trumbull County.

   a. Most of my comments and questions at this meeting were directed to the Trumbull County Engineer, Randy Smith.
   b. The majority of my comments and questions were based around three points. 1.) are all vehicles using a weight limited road being treated equally; 2.) why does their permit system allow some trucks to haul materials on weight limited roads for $50/year when others (like loggers) have to pay $2000/year to use the same road, based solely on where the origination point of the business is, and 3.) why are they asking users of these permits to sign a document that states the user is responsible for paying for damages to a road, when that road is being used by other heavy haulers that aren't being required to get permits, or to share in the responsibility for damages.
   c. I used many examples of how it appeared that log and lumber trucks were being treated differently that other haulers.
   d. One very specific example I used was this: A logger is starting a logging job on a private landowner whose access point is on a weight limited road, and the logger needs 10 heavy loads of rock to line the access drive into the property. The logger contracts with a local gravel company to haul 10 – 80,000lb loads of rock into the site. The local gravel company paid $50 for an annual permit that allowed him to haul that rock into the site.

Now the logger needs to haul 10-80,000lb loads of logs off that same site. The logger is required to pay $500 for a 90-day permit to haul those loads out of the site. Now, if the logger moves to another location a few months later, on a weight limited road, and goes through the exact same process, the gravel company pays nothing to haul 10 more heavy loads of rock, but the logger will now have to get another $500, 90-day permit to haul his 10 loads from the same site. Over a year's time, this equates to $50 for the gravel company and $2000 for the logger. I told Randy Smith that this wasn't equitable.

e. Randy Smith's response to this example, and every example I used in 1 hour and 45 minutes of discussion was: "It seems equitable to me, so I guess we'll just have to agree to disagree." I responded to Randy Smith at that time, that if I had an incredulous look on my face it was because anybody with lesser math skills than an engineer would know that $50 and $2000 for the same activity is not equitable.

f. He offered no explanation why it was equitable.

g. I asked if farmers that use heavy semi-trucks to haul their 80,000lb loads of grains from their fields would be required to get the same $500, 90-day permit if they were using a weight limited road. As in my previous discussions with other members of the engineer's office, I was not given a direct response. I was told that if any grain trucks were stopped and weighed and were found to be overweight for the posting of the weight limited road, then that situation would be addressed.

h. Knowing that Randy Smith also farmed grains, I asked him if he had gotten a permit for himself. He replied that he was fortunate that his farms weren't located on weight limited roads.

i. Randy Smith left for another meeting after 1 hour and 45 minutes of meeting with us. In the next 15 minutes of discussions with Jack Simon of the Trumbull County Engineers office, Jack seemed to indicate that maybe there was some room for negotiation of the permit fees.

12. On October 24, 2018, I met with the 2 Ohio Farm Bureau Federation representatives that attended the above described meeting.

a. Their main comment was that they were amazed that Randy Smith offered up the same answer to almost every example that was put before him ("It seems equitable to me, so I guess we'll just have to agree to disagree.") without offering any explanation for why it was equitable.

13. On February 14, 2018, I met again with the Northeast Ohio Loggers Chapter to let them no that I was not making much headway on the road use permit issue with the Trumbull County Engineers office, but that I would continue to try to negotiate with them if the chapter wanted me to. The chapter agreed that I should continue to work with the Trumbull County Engineers office to try to resolve this issue.

14. On March 12, 2018, Mr. Spithaler and I met at my office in Zanesville, Ohio to discuss information he had found at the Trumbull County Engineers office concerning what companies had applied for and received permits to haul on weight limited roads in Trumbull County. Mr. Spithaler provided me with copies of the permits that he copied for himself as public records, and also provided me with a summary of those permits. (see Example 7)

    a. What was missing from these records and summary was that no grain haulers could be identified as having been required to get a permit to haul on weight limited roads in Trumbull County, even though an entire harvest season had passed since we began questioning the Trumbull County Engineers office about whether that segment of agricultural industry would be treated the same as the logging sector of the agricultural industry. (see ORC 1.61 Agriculture defined)

15. On March 14, 2018, I met with Jack Simon and Steve Gerberry of the Trumbull County Engineers office. During these discussions, Jack Simon brought up the point that the majority of damage in the case of loggers or others hauling from non-permanent access points onto weight limited roads was at the very point of access.

16. On March 27, 2018, I was contacted by reporter Renee Fox of the Warren Times Chronicle concerning discussions she had had with Mr. Spithaler about road use issues with loggers and lumbermen in Trumbull County.

    a. I was very careful in my discussions with Renee to not make any direct, unconfirmed accusations against the Trumbull County Engineer or his office in general.
    b. I did however, voice my opinion that in all the discussions I had had with the Engineers office, and the public records I had reviewed, there was a strong appearance that the logging and lumber industry was being treated differently than other industries.
    c. An article on these concerns was published in the Warren Times Chronicle on April 2, 2018. (see Example 8)

17. Sometime between March 31, 2018 and April 11, 2018 I received two letters in the mail from Matt Blair, an attorney claiming to be acting as a legal advisor to the Trumbull County Engineers office.
    a. The two letters were dated March 23, 2018 and March 30, 2018. (see Example 9 for the two letters)
    b. Due to the fact that Mr. Blair used our old office address, I received both letters the same day because the mail was collected by the post office then forwarded to our current address.
    c. In the letter dated March 23, 2018, Mr. Blair makes a point of saying that the Trumbull County Sheriff's office operates the portable scales and makes the decisions over how they are used even though I was informed earlier (Paragraph 6.f.) that the Trumbull

County Engineers office owns the scales and pays the wages of the deputy that operates them.

d.  In the second letter dated March 30, 2018, Mr. Blair takes exception to the opinions I expressed in my earlier interview with Renee Fox of the Warren Times Chronicle.

e.  He also states that Mr. Spithaler's content and frequency of current and past communications with the Trumbull County Engineers office are troubling to them.

f.  Mr. Blair again tries to exert in this letter that the Trumbull County Engineers office makes no determinations as to the operations of the portable scales.

g.  Mr. Blair advised me to contact him if I had any questions.

h.  Mr. Blair left no direct contact information.

i.  I researched Mr. Blair and found his office location address and phone number.

18. On April 10, 2018, I called Mr. Blair and discussed his letters.

a.  I assured Mr. Blair that I was making no direct accusations of Randy Smith or the Trumbull County Engineers office, but that I still maintained that there was a great appearance that the logging and lumber industry was being held to a different standard in their special hauling permit process than other industries.

b.  Mr. Blair kept wanting to talk about a specific permit issue on a specific location with Mr. Spithaler.

c.  I had been informed earlier by Mr. Spithaler that he had applied for an Annual Permit for the road his home, firewood, and grill smoker wood businesses were located on, (Davis-Peck Road) and that it was not a weight limited road. Mr. Spithaler also related to me that his permit was being held up because the county had decided to test his section of Davis-Peck Road for weight limits.

d.  I told Mr. Blair several times that I am advocating for the entire forest products industry, not just for a specific permit issue on a specific location with Mr. Spithaler.

e.  Mr. Blair again tried to deflect any responsibility for the portable scales away from the Trumbull County Engineers office.

f.  I stated to Mr. Blair that it would be too big of a stretch for a logical person to think that the Trumbull County Engineer would purchase the portable scales, reimburse the Sheriff's department for the deputy's wages that operates the scales, yet have no input on the operation of those scales.

19. On April 11, 2018, I sent an email to Jack Simon of the Trumbull County Engineers office outlining my thoughts on access points and how we could possibly negotiate a more equitable fee for the road use, but have a different program based around the access point. I included in this email, example documents from another county that I had been working with on similar issues (Coshocton County). (see Example 10 for email and documents from Coshocton County)

20. On April 13, 2018, Steve Gerberry of the Trumbull County Engineers office responded to my April 11, 2018 email to Jack Simon.

    a. In the reply, Steve included a copy of the Trumbull County Commissioners resolution (see Example 11) concerning acceptance of the current special hauling permit process. Matt Blair had asked him to include this.
    b. Steve also stated that Mr. Blair would like to set up a meeting to discuss the topics laid out in my April 11, 2018 email, referenced above in Paragraph 19 and Example 10.

21. On April 16, 2018, I replied to Steve Gerberry that I would be glad to meet with them to discuss the information I sent. I also questioned why he sent me the Trumbull County Commissioners resolution. (see email string in Example 12)

22. In subsequent emails, Steve Gerberry and I arranged a meeting for April 27, 2018 at the Trumbull County Engineers office.

    a. Matt Blair, Jack Simon, Steve Gerberry and myself attended the above mentioned meeting.
    b. All Mr. Blair wanted to talk about at the meeting was the specific permit issue on a specific location with Mr. Spithaler.
    c. Again, I told Mr. Blair several times that I am advocating for the entire forest products industry, not just for a specific permit issue on a specific location with Mr. Spithaler.
    d. I told Mr. Blair that that specific issue with Mr. Spithaler would work its way through the system.
    e. Mr. Blair again tried to deflect any responsibility for the portable scales away from the Trumbull County Engineers office.
    f. Once again, I stated to Mr. Blair that it would be too big of a stretch for a logical person to think that the Trumbull County Engineer would purchase the portable scales, reimburse the Sheriff's department for the deputy's wages that operates the scales, yet have no input on the operation of those scales.
    g. Neither Matt Blair, Jack Simon, or Steve Gerberry came prepared to discuss the information I had sent them in the email referenced in Paragraph 19 and Example 10, which I had been told was the reason for this meeting.

23. On July 2, 2018 I sent Steve Gerberry of the Trumbull County Engineers office a request for records relating to their special hauling permit process. (see Example 13)
    a. On July 6, 2018 I received an email response from Steve Gerberry stating that my request had been referred to outside council.
    b. I replied to Steve on July 9, 2018 asking if it was normal for a public records request to be referred to outside council. (see email string in Example 14)

24. On July 27, 2018 I received a response to my public records request, referenced in Paragraph 23 and Example 13, from Scyld Anderson. (see Example 15)

    a. I reviewed these records with Mr. Spithaler, as he is local to that area, he can identify types of businesses, and we have been working on these issues together for the benefit of the forest products industry.

    b. We were again unable to identify any grain haulers that had been required to obtain a $500 90-day permit.

25. Over the next few months, Mr. Spithaler and I communicated several times concerning his permit travails and other concerns in the county surrounding their special hauling permit process.

    a. At some point, and I don't have the exact date recorded, Mr. Spithaler informed me that his attorney was filing a lawsuit in Federal Court over the issues concerning the requested Annual Permit for his property on Davis-Peck Road referenced in Paragraph 18.c.

    b. I decided at this point to discontinue trying to work with the Trumbull County Engineers office to resolve issues around their special hauling permit process until the results of the above-mentioned lawsuit were realized.

    c. I have continued to stay in contact with Mr. Spithaler and other industry members in NE Ohio concerning the above-mentioned lawsuit and the issues surrounding it.

I hereby state that the information above is true, to the best of my knowledge. I also confirm that the information here is both accurate and complete, and relevant information has not been omitted.

Signature of Individual

*Bradly Jenkins*

Date

3/22/2019

Notary Public

*Loa Denise Foster*

Title And Rank

*Notary Public - OH*

Date Of Commission Expiry  6/17/1923

LOA DENISE FOSTER
NOTARY PUBLIC - OHIO
MY COMMISSION EXPIRES 06-17-23



# Ohio Forestry Association, Inc.

1100-H Brandywine Blvd., Zanesville, OH 43701
Phone Toll Free: (888) 388-7337; Fax: 740-452-2552
E-mail: info@ohioforest.org
www.ohioforest.org

**Stan Swierz**
President
Columbus
**Randy Bates**
1ˢᵗ Vice President
Cambridge
**Adam Conway**
2ⁿᵈ Vice President
Vincent
**Tom Brown**
3ʳᵈ Vice President
Lucasville
**Jeff Hoselton**
Past President
Chillicothe
**David Bergman**
Treasurer
Westerville
**Brad Perkins**
Executive Director
Zanesville

<u>Board of Trustees</u>
**Rudy Brandt**
Haydenville
**Eric Doll**
Southington
**Jeff Jenkins**
Chillicothe
**Mike Krol**
Circleville
**Jared Lute**
Lucasville
**Martin McCutcheon**
Columbus
**Irene Moore**
Steubenville
**Cassie Ridenour**
Gratiot
**Bob Romig**
Wooster
**Alan Smith**
Thurman
**James Stafford**
Zanesville
**Allen Troyer**
Berlin
**Alan Walter**
Carrollton

*The Voice of the Forest Products Industry in Ohio*

The Ohio Forestry Association, Inc. (OFA) operates as a trade association of Ohio forest products industry and forestry interests, on behalf of its more than 600 members representing wood products manufacturers, sawmills, logging companies, foresters and forestry consultants, forest landowners, equipment companies, and service firms.

The Association's key points of interest are:

- To promote Ohio's robust forest products industry ($26 billion/year impact and 50,000 people directly employed).
- To encourage the continued growth of this industry in Ohio as the state has a surplus of timber growth (growth exceeds removals by over 100%)
- To maintain or grow the amount of forested acreage in Ohio (currently 8.1 million acres)
- To promote responsible and productive forest management practices throughout the state.
- To promote lower forestland taxes to reduce pressure on landowners to convert timberlands to other uses.
- To work with municipalities, townships and counties, to address local ordinance and road use issues that will create a cooperative working environment for the forest products industry.
- To educate forest landowners about the benefits of proper forest management.
- To educate the public about the many benefits the forest products industry provides to all Ohioans.

*Mail or deliver to:*
Trumbull County Engineer
650 North River Rd., NW
Warren, Ohio 44483-2235
*Contact us at:*
(330) 675-2640

# TRUMBULL COUNTY ENGINEER
## APPLICATION FOR SPECIAL HAULING PERMIT
Issued in accordance with Section 4513.34 of the Ohio Revised Code.



**PERMIT NO.**
_____

## Type of Application and Fee

Make checks payable to: Trumbull County Treasurer

| | | |
|---|---|---|
| ☐ | Single Trip & Return Overweight | $20/Truck  (Retroactive $30/Truck)  *As Per Mile* |
| ☐ | Quarterly Operator Fleet 90 Day (up to 80,000lbs GVW) | $500 Road Maintenance Fund + $20 Processing Fee (Retroactive $750 + $20 Processing Fee) |
| ☐ | Annual Supplier Fleet 365 Day (up to 80,000lbs GVW) | $50 Trumbull County / $100 Outside County (Retroactive $75 Trumbull / $150 Outside) |
| ☐ | Annual Steel/Aluminum Coil/Injection Mold 365 Day | $50/Truck  (Retroactive $75/Truck) |
| ☐ | Rush Processing | $50 |

***See description of permit types and fee schedule on page 3**

## Applicant Information

| | |
|---|---|
| Owner/Lessee/Insured (of Vehicle/s) | |
| Mailing Address | |
| City, State, Zip Code | |
| Phone | Fax |
| E-Mail Address | |
| Desired Effective Date/s | Permit Transmittal   Mail ☐   Pick-Up ☐ |

## Vehicle Information

| | Make | # Axles | License # | State | Empty Weight |
|---|---|---|---|---|---|
| Power Unit | | | | | |
| Trailer 1 | | | | | |
| Trailer 2 | | | | | |
| Trailer 3 | | | | | |

***Operator/Supplier permits to complete page 4 for fleet info**     Gross Vehicle Weight

## Load Description

| | Axle 1 | Axle 2 | Axle 3 | Axle 4 | Axle 5 | Axle 6 | Axle 7 |
|---|---|---|---|---|---|---|---|
| Load ( Axle Weights) | | | | | | | |
| Number of Tires | | | | | | | |
| Tire Width | | | | | | | |
| Spacing Between Axles | | | | | | | |

## Route Information

| | | |
|---|---|---|
| From | To | |
| Via Routes: | | |

***Additional space provided on page 5**

## Agreement and Signature

I, as a duly authorized representative of the applicant of this permit, have read, understand and agree to comply with all of the conditions contained within this permit.

Print Name _____     Signature _____

## Trumbull County Engineer Approval

Signature _____     Date _____

**EFFECTIVE DATE:** _____     **EXPIRATION DATE:** _____

## TRUMBULL COUNTY ENGINEER
### APPLICATION FOR SPECIAL HAULING PERMIT
Issued in accordance with Section 4513.34 of the Ohio Revised Code.

## LIMITATIONS ON THE USE OF A SPECIAL HAULING PERMIT

1. The granting of a permit does not guarantee that the load described can be moved without damage to the pavement or structures; although the permit is granted on the assumption that the load can be moved without damage based on the best information available.

2. Permittee will be held liable for any damage caused by the movement. The County assumes no responsibility for damage to the applicant's equipment or load being moved due to any such failure. The applicant agrees to compensate the County for any damage to a roadway or road structure and also to hold the County and Trumbull County Engineer harmless from all claims, damages or proceedings of any kind and from all responsibility for personal injury or property damages (public or private) caused directly or indirectly as a result of the transportation of said vehicle(s) or object(s).

3. The permit shall be in the possession of the driver at all times during the progress of transportation and will be shown on demand to any police officer, state highway patrolman, or employee of the county highway or state highway department.

4. **This permit shall not constitute permission to travel upon county owned and maintained bridges which have been "load posted" with a lower rating than the calculated Ohio Legal Load limit of the applicant's vehicle.**

5. The permission granted restricts the movement of the vehicle(s) or object(s) to the highways specified, between the points designated, and within the time allotted.

6. No vehicle(s) or object(s) being transported under special highway permit shall be left parked on the roadway either day or night except in case of an emergency, in which case adequate protection shall be provided for the traveling public. The vehicle(s) shall not be loaded or unloaded within the limits of the highway.

7. The operator of the vehicle must comply with all laws, rules, or regulations covering the movement of traffic over highways and streets and those governing commercial motor vehicle operations in accordance with all federal, state and local laws.

8. Loads having extremely large dimensions shall require additional protective measures when necessary for the safeguarding of other traffic. Due regard shall be taken of traffic in both directions and every possible effort shall be made to prevent traffic congestion. One or more flagmen or a pilot car may be required.

9. Non-compliance with the general or special provisions of a permit, exceeding the weights or dimensions granted, or operating on dates or upon highways other than assigned shall render the permit null and void and the operator of the vehicle subject to arrest, as provided in Sections 5577.02 to 5577.05 inclusive of the Revised Code of Ohio.

10. Overweight permitted vehicles hauling steel/aluminum coils do not have any travel hour or day restrictions.

11. This permit is void at any time that road, weather or traffic conditions make travel unsafe as determined by local, state or federal law enforcement.

12. This permit does not grant the authority to use state owned and maintained bridges on county roads. If the applicant requires the use of state owned and maintained bridges on county roads for travel, an additional permit is required from the Ohio Department of Transportation.

13. Trumbull County shall be named as additional insured of the applicant's liability insurance. Applicant shall provide the County with a certified copy of the policy declarations.

14. The applicant shall provide Trumbull County with all copies of its ODOT permits.

2

# TRUMBULL COUNTY ENGINEER
## APPLICATION FOR SPECIAL HAULING PERMIT
Issued in accordance with Section 4513.34 of the Ohio Revised Code.

## SPECIAL HAULING PERMITS TYPES AND FEE SCHEDULE

| | |
|---|---|
| **SINGLE TRIP & RETURN** | This permit is granted for a legal dimensioned overweight vehicle to make one move during a 5 day period between two specific points over prescribed routes. |
| Processing: | Single trip permits require a $20 fee, proof of $1,000,000 in liability insurance naming Trumbull County as an additional insured, along with a $50,000 surety bond. Permits requested retroactively after hauling has commenced require a $30 fee. |
| **CONTINUING OPERATOR (90 DAY)** | This permit pertains to businesses or persons who operate out of a facility, or provide maintenance to a site, located on a **"load posted"** county or township road. Operator permits are issued for legal dimensioned vehicles not exceeding 80,000lbs gross vehicle weight. These permits will be issued to the owner/operator on a quarterly basis not to exceed 90 days. |
| Processing: | Continuing Operator permits require a $500 fee applied to a road maintenance fund, in addition to a $20 processing fee. $1,000,000 in liability insurance is required naming Trumbull County as an additional insured. All applicable vehicles to be utilized throughout the duration of the permit must be listed on page 4 of this application.  Permits requested retroactively after hauling has commenced require a $750 applied to a road maintenance fund, in addition to a $20 processing fee. |
| *Trumbull County* **ANNUAL SUPPLIER (365 DAY)** | Annual Supplier permits pertain to Trumbull County businesses transporting aggregate, concrete, construction goods or other like material to sites located upon **"load posted"** county or township roads (not to exceed 80,000 pounds gross vehicle weight). This is in accordance with ORC Section 5577.043 (D)(2). |
| Processing: | Continuing Supplier permits for businesses located within Trumbull County require a $50 fee for road maintenance in addition to proof of $1,000,000 in liability insurance naming Trumbull County as an additional insured.  Permits requested retroactively after hauling has commenced require a $75 fee. All applicable vehicles to be utilized throughout the duration of the permit must be listed on page 4 of this application. |

*Safety service vehicles including police, fire, and EMS, as well as, school buses are exempt and not subject to obtaining a permit.

| | |
|---|---|
| *Outside County* **ANNUAL SUPPLIER (365 DAY)** | Annual Supplier permits pertain to businesses outside of Trumbull County transporting aggregate, concrete, construction goods or other like material to sites located upon **"load posted"** county or township roads within Trumbull County (not to exceed 80,000lbs gross vehicle weight). This is in accordance with ORC Section 5577.043 (D)(2). |
| Processing: | Continuing Supplier permits for businesses not located within Trumbull County require a $100 fee for road maintenance in addition to proof of $1,000,000 in liability insurance naming Trumbull County as an additional insured.  Permits requested retroactively after hauling require a $150 fee. All applicable vehicles to be utilized throughout the duration of the permit must be listed on page 4 of this application. |
| **ANNUAL STEEL COIL/ INJECTION MOLDS (365 DAY)** | Annual permits may be issued for a legal dimensioned overweight vehicles (not to exceed 120,000lbs gross vehicle weight) transporting steel coils or injection molds between two specific points, over prescribed routes. |
| Processing: | These permits require a $50 processing fee per truck as well as proof of $1,000,000 in liability insurance naming Trumbull County as an additional insured.  Permits requested retroactively after hauling has commenced require a $75 fee. Copies of approved ODOT permits as they pertain to Trumbull County must also be submitted. |
| **RUSH PROCESSING:** | Requests for same day or next day application processing will require an administrative rush fee of $50. Traditional turnaround for application processing is 5-7 business days. |

*No Bond*

3

### TRUMBULL COUNTY ENGINEER
#### APPLICATION FOR SPECIAL HAULING PERMIT
Issued in accordance with Section 4513.34 of the Ohio Revised Code.

PERMIT NO.

_____

## FLEET INFORMATION FOR OPERATOR/SUPPLIER PERMITS

| Contractor/Company Name: | | | | | | |
|---|---|---|---|---|---|---|
| License # | State | Type (Power unit, trailer, equipment) | Make | Model | Unit # | Weight |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

*Make additional copies if necessary*

PAGE _____   OF _____

4

## TRUMBULL COUNTY ENGINEER
### APPLICATION FOR SPECIAL HAULING PERMIT
Issued in accordance with Section 4513.34 of the Ohio Revised Code.

PERMIT NO.

**Additional Route Information:**

5

**Brad Perkins**

| | |
|---|---|
| **From:** | Brad Perkins |
| **Sent:** | Wednesday, August 2, 2017 4:43 PM |
| **To:** | 'hwsimon@co.trumbull.oh.us' |
| **Cc:** | 'commissioners@co.trumbull.oh.us'; 'hwgerber@co.trumbull.oh.us'; John Dorka; 'Adam@americanmadelumber.com' |
| **Subject:** | Road Use Issues for Loggers and Sawmills in Trumbull County |

Jack,

I wanted to get back with you on a few of my thoughts from the meeting we had a couple weeks ago. The biggest thing that jumps out at me is what appears to be a huge discrepancy between the timber/sawmill industry and others like the gravel industry. If weight is weight, and loads are loads, they should be treated equally. Below are some thoughts on scenarios around this topic.

- According to your permit: Why would an aggregate company be allowed to pay $50 per year for a permit to haul unlimited 86,000 loads (with weight variance) from the aggregate company to any site, or number of sites, in the county while a logger hauling even a small number of equal weight loads from one or a number of sites in the county would have to pay at least $2000 to haul for a year in the county (several thousand dollars if they have to permit each township also)?
    - o An aggregate company could haul 100 loads of sand or gravel into a well site for instance...and a logger might haul 20 loads of logs off a logging job. Less loads, same weight per load, one site....yet the logger pays 10 to 40 times the permit fee.
    - o This has the appearance of discrimination against a specific industry.

- Would a farmer have to get this same $500/90 days permit to haul loads from his fields?
    - o Would this also apply to their large, heavy combines and other equipment they drive down the roads?
    - o If not, can a logger move his harvesting equipment down the same roads without having to worry about being stopped for overweight loads? It shouldn't matter whether he is driving the overweight combine down the road or hauling the skidder on a flatbed. Weight is weight.
    - o Loggers in your county are telling me that township trustees are saying that they are not going to bother farmers. Why would they bother loggers and not farmers if weight is weight.
    - o Again, if there is any truth to this, it has the appearance of discrimination against a specific industry.
    - o Many forest landowners have their properties in the same tax programs as other row crop farmers. Will they not be able to harvest and sell their crop without having to pay a larger permit fee than a row crop farmer? This seems perverse since a woods only has trucks hauling in and out of it once every 20-80 years, but a row crop farmer harvests from their fields each and every year.

- If a sawmill owned its trucks, could they get an annual permit to haul unlimited loads of logs into that mill, and lumber out of that mill, just like the aggregate trucks?
    - o If not, it again appears to be discrimination against a specific industry.
    - o If so, then the sawmill should be able to haul logs from various logging sites within the county, or outside of the county, back to his mill, without the logger needing to get a 90 day permit. Just like the person needing aggregate hauled to their site wouldn't need a permit because the aggregate hauler has an annual permit.
    - o It shouldn't matter if the loads are being hauled into a site or out of a site, weight is weight and loads are loads.

- If a sawmill does not own trucks (Amish), can he still get an annual permit to have contractors haul logs in and lumber out?
  - If so, will he be provided with something to give to all the contractors that haul in and out?
  - If not, why not? It is a fixed location just like an aggregate facility. Trucks go in and out of both places day in and day out. Weight is weight and loads are loads.
  - If not, then not only does it appear to be discrimination against the logging/sawmill industry, but it could also appear that the Amish are being discriminated against because they don't own the trucks.

- Sawmills often export logs and/or lumber overseas. They call a transport company that sends shipping containers to the sawmill to be loaded.
  - The sawmill may not know what trucks or trucking companies are going to show up to get these loads.
  - How do they permit these trucks?
  - They can't even get to some of the mills empty without being overweight.

- If a sawmill or logger uses several small contractors (owning 1 or 2 trucks each) to haul their material, and each one has to pay a permit fee, this is burdensomely costly compared to the aggregate hauler that pays one small annual fee and just lists his trucks on a sheet of paper.
  - Could a sawmill or logger pay a small annual fee and just list the trucks of his contractors?
  - If not, it looks discriminating again.

- A few other thoughts:
  - I think one of the big sticking points is the small cost of an annual permit versus the high cost of the 90 day permits that is being forced on loggers. It defies logic that it is OK for an aggregate company to potentially haul thousands of heavy loads in a year's time for a $50 permit, while it could cost a logger $500 to haul 10 loads of logs on the same roads.
  - The annual fee should be the higher fee. There should be less opportunity for road damage if someone is only hauling for 2 or 3 months from a logging job or farm harvest site, than for an entire year from a sawmill or an aggregate facility.
  - Most timber harvesting contracts with a landowner are for 1 to 2 years. This gives the logger time to work around the weather to do harvesting that would cause the least damage. If he has to start and stop a few times to make sure that he is not hurting the property and roads during the wet times, he is penalized by having to get another expensive 90 day permit.

In closing, I have heard from some industry folks From Trumbull County the last couple days that are very upset because they seem to be getting the run-around as to whether the township or county is handling permitting for township roads. There has also been an issue or two with log or lumber trucks being stopped and taken several miles to be weighed, possibly outside the acceptable limits for such activities.

I am encouraging them to do their best to abide by the current Trumbull County rules as we discuss with you as to whether or not a better system can be worked out. I am hearing rumblings of discrimination lawsuits. I would like to avoid these types of actions for all parties involved if possible.

I would greatly appreciate your feedback on the above points of discussion.

Best regards,

Brad Perkins
Executive Director
Ohio Forestry Association
1100-H Brandywine Blvd
Zanesville, Ohio 43701
Office: 888-38-TREES (888-388-7337)

Example 4

## Brad Perkins

| | |
|---|---|
| **From:** | Jack Simon <hwsimon@co.trumbull.oh.us> |
| **Sent:** | Thursday, August 3, 2017 3:10 PM |
| **To:** | Brad Perkins |
| **Subject:** | RE: Road Use Issues for Loggers and Sawmills in Trumbull County |

**From:** Brad Perkins [mailto:Brad@ohioforest.org]
**Sent:** Wednesday, August 02, 2017 4:43 PM
**To:** Jack Simon
**Cc:** Commissioners; Steven J. Gerberry; John Dorka; Adam@americanmadelumber.com
**Subject:** Road Use Issues for Loggers and Sawmills in Trumbull County

Jack,

I wanted to get back with you on a few of my thoughts from the meeting we had a couple weeks ago. The biggest thing that jumps out at me is what appears to be a huge discrepancy between the timber/sawmill industry and others like the gravel industry. If weight is weight, and loads are loads, they should be treated equally. Below are some thoughts on scenarios around this topic.

- According to your permit: Why would an aggregate company be allowed to pay $50 per year for a permit to haul unlimited 86,000 loads (with weight variance) from the aggregate company to any site, or number of sites, in the county while a logger hauling even a small number of equal weight loads from one or a number of sites in the county would have to pay at least $2000 to haul for a year in the county (several thousand dollars if they have to permit each township also)?
    - An aggregate company could haul 100 loads of sand or gravel into a well site for instance...and a logger might haul 20 loads of logs off a logging job. Less loads, same weight per load, one site....yet the logger pays 10 to 40 times the permit fee.
    - This has the appearance of discrimination against a specific industry.

    1. A horizontal well site that would require a 100 loads of aggregate would be required to negotiate a RUMA which is separate from the special hauling permit process, otherwise that would be considered to be providing maintenance and require a Continuing Operator 90 day permit
    2. The 90 day permit is not specific or discriminatory to any one or type of industry, it is for *any* business that sets up temporarily on a posted roadway; every load in and out would be on a roadway not constructed for any weight over that roadways posted limit
    3. The annual permit is for business's located on a non-posted roadway that *may* deliver on posted county roadways

- Would a farmer have to get this same $500/90 days permit to haul loads from his fields?
    - Would this also apply to their large, heavy combines and other equipment they drive down the roads?
    - If not, can a logger move his harvesting equipment down the same roads without having to worry about being stopped for overweight loads? It shouldn't matter whether he is driving the overweight combine down the road or hauling the skidder on a flatbed. Weight is weight.
    - Loggers in your county are telling me that township trustees are saying that they are not going to bother farmers. Why would they bother loggers and not farmers if weight is weight.
    - Again, if there is any truth to this, it has the appearance of discrimination against a specific industry.

1

- o  Many forest landowners have their properties in the same tax programs as other row crop farmers. Will they not be able to harvest and sell their crop without having to pay a larger permit fee than a row crop farmer? This seems perverse since a woods only has trucks hauling in and out of it once every 20-80 years, but a row crop farmer harvests from their fields each and every year.

  1. Anyone hauling on a posted roadway is required to acquire a permit
  2. I cannot speak for any Trustee

- If a sawmill owned its trucks, could they get an annual permit to haul unlimited loads of logs into that mill, and lumber out of that mill, just like the aggregate trucks?
  - o  If not, it again appears to be discrimination against a specific industry.
  - o  If so, then the sawmill should be able to haul logs from various logging sites within the county, or outside of the county, back to his mill, without the logger needing to get a 90 day permit. Just like the person needing aggregate hauled to their site wouldn't need a permit because the aggregate hauler has an annual permit.
  - o  It shouldn't matter if the loads are being hauled into a site or out of a site, weight is weight and loads are loads.

  1. As defined on page 3 of Trumbull County special hauling permit, <u>Annual Supplier permits pertain to Trumbull County businesses transporting aggregate, concrete, construction goods or other like material to sites located upon **"load posted"** county roads</u> (*note the original permit stated county and township roads, the word *township* has been eliminated from our permit, the permit covers county roads only)
  2. If a permit is acquired logs, or any other material, can be hauled out of the facility to load posted county roadways
  3. If the business is on a non-posted roadway any delivery at or below the legal limit is allowable, if on a posted permits would be required to receive deliveries

- If a sawmill does not own trucks (Amish), can he still get an annual permit to have contractors haul logs in and lumber out?
  - o  If so, will he be provided with something to give to all the contractors that haul in and out?
  - o  If not, why not? It is a fixed location just like an aggregate facility. Trucks go in and out of both places day in and day out. Weight is weight and loads are loads.
  - o  If not, then not only does it appear to be discrimination against the logging/sawmill industry, but it could also appear that the Amish are being discriminated against because they don't own the trucks.

  1. As defined on page 3 of Trumbull County special hauling permit, <u>Annual Supplier permits pertain to Trumbull County businesses transporting aggregate, concrete, construction goods or other like material to sites located upon **"load posted"** county roads</u> (*note the original permit stated county and township roads, the word *township* has been eliminated from our permit, the permit covers county roads only)
  2. If any business is located on a non-posted road no permits are needed to receive deliveries.

- Sawmills often export logs and/or lumber overseas. They call a transport company that sends shipping containers to the sawmill to be loaded.
  - o  The sawmill may not know what trucks or trucking companies are going to show up to get these loads.
  - o  How do they permit these trucks?
  - o  They can't even get to some of the mills empty without being overweight.

  1. It is our opinion that a trucking company picking up or delivering to a business is responsible to acquire their own permits, be it local or state

2

- If a sawmill or logger uses several small contractors (owning 1 or 2 trucks each) to haul their material, and each one has to pay a permit fee, this is burdensomely costly compared to the aggregate hauler that pays one small annual fee and just lists his trucks on a sheet of paper.
  - o Could a sawmill or logger pay a small annual fee and just list the trucks of his contractors?
  - o If not, it looks discriminating again.

  1. More clarification is needed here, is this for a portable operation in a forest or a permanent location? Is it on a posted or non-posted road?

- A few other thoughts:
  - o I think one of the big sticking points is the small cost of an annual permit versus the high cost of the 90 day permits that is being forced on loggers. It defies logic that it is OK for an aggregate company to potentially haul thousands of heavy loads in a year's time for a $50 permit, while it could cost a logger $500 to haul 10 loads of logs on the same roads.
  - o The annual fee should be the higher fee. There should be less opportunity for road damage if someone is only hauling for 2 or 3 months from a logging job or farm harvest site, than for an entire year from a sawmill or an aggregate facility.
  - o Most timber harvesting contracts with a landowner are for 1 to 2 years. This gives the logger time to work around the weather to do harvesting that would cause the least damage. If he has to start and stop a few times to make sure that he is not hurting the property and roads during the wet times, he is penalized by having to get another expensive 90 day permit.

  1. The annual permit does not allow loads over the legal limit of 80,000 lbs. nor is it issued to businesses located on a load posted road
  2. The continuing 90 day permit assumes the business is located on a load posted with primarily one point of ingress and egress that most likely will cause premature damage to that road if said business is located on a non-posted road no such        permit is required for any loads under the legal limit

In closing, I have heard from some industry folks From Trumbull County the last couple days that are very upset because they seem to be getting the run-around as to whether the township or county is handling permitting for township roads. There has also been an issue or two with log or lumber trucks being stopped and taken several miles to be weighed, possibly outside the acceptable limits for such activities.

  1. Some townships do their own permitting others have requested our assistance in facilitating their permits
  2. I cannot answer for the sheriff however I was informed by an officer that they are allowed a 3 mile radius to weigh a vehicle and up to a 20 mile route to get to it so as not to utilize posted roads

I am encouraging them to do their best to abide by the current Trumbull County rules as we discuss with you as to whether or not a better system can be worked out. I am hearing rumblings of discrimination lawsuits. I would like to avoid these types of actions for all parties involved if possible.

I would greatly appreciate your feedback on the above points of discussion.

Best regards,

Brad Perkins
Executive Director
Ohio Forestry Association
1100-H Brandywine Blvd
Zanesville, Ohio 43701
Office: 888-38-TREES (888-388-7337)

3

Example 5

### Office of the
### Trumbull County Engineer
Sign-In Sheet

**Subject:** mtg. w/ Forestry Assoc.

**Facilitator:** TCE

**Meeting/Date/Time:** 10-11-2017

**Place/Room:** TCE Conference Rm.

| Name | Entity/Organization | Phone | Email |
|---|---|---|---|
| Steven Gerberry | TCE | 330 675 2270 | sgerber@co.trumbull.oh.us |
| Jenna Beadle | Ohio Farm Bureau | 614-246-8855 | jbeadle@ofbf.org |
| Leah Curtis | Ohio Farm Bureau | 614-246-8912 | lcurtis@ofbf.org |
| Jack Simon | TCE | 330-675-2257 | Husimon@co.trumbull.oh.us |
| Brad Perkins | Ohio Forestry Association | 740-502-1415 | bode@ohioforest.org |
| John Dorka | Ohio Forestry Assoc. | 740-502-1415 | john@ohioforest.org |
| Alan Thomas | NEOLC | 814-258-0578 | athomas@american made lumber.com |
| Gary Sheffer | TCE | 330.675.2253 | gsheffer@co.trumbull.oh.us |
| Jennifer Dammeyer | TCE | 330-675-2221 | hwdammao@co.trumbull.oh.us |
| Randy Smith | TCE | 330.675.2221 | |
| | | | |
| | | | |
| | | | |
| | | | |

## Brad Perkins

| | |
|---|---|
| **From:** | Brad Perkins |
| **Sent:** | Tuesday, October 10, 2017 10:07 AM |
| **To:** | Jenna Beadle; 'Leah Curtis'; 'Adam@americanmadelumber.com' |
| **Cc:** | John Dorka |
| **Subject:** | Meeting Tomorrow with Trumbull County Engineers Office |

Good Morning!

I just wanted to touch base with folks before the meeting tomorrow with the Trumbull County Engineers Office concerning the road use issues in Trumbull County. The meeting is scheduled for 10:00 AM in the Trumbull County Engineers Conference Room. Their office is located at 650 N River Road NW, Warren, Ohio, 44483.

There are 4 key things in my mind that I hope to get good discussion on.
1. All users of the road that exceed the posted weight need to be treated equally.
2. There is a huge cost discrepancy in their current permit process for different haulers.
3. Is agriculture exempt or not? We are getting conflicting reports.
4. Liability Insurance and Additional Insured designation may be an issue.

I hope they will be forthright with us in these discussions, and I would like them to work with us on coming up with a better alternative.

See everyone tomorrow!

Brad Perkins
Executive Director
Ohio Forestry Association
1100-H Brandywine Blvd
Zanesville, Ohio 43701
Office: 888-38-TREES (888-388-7337)
Fax: 740-452-2552
Cell: 740-502-4215
Email: Brad@ohioforest.org
Web: www.ohioforest.org

1

# Loggers

| Permit | Name. | Trucks | Axles | Paid. | |
|---|---|---|---|---|---|
| QF001-2017 | Paul Yoder | 1 | 6 | $500.00 | 8,000 |
| Ins. yes | Also Had Bond. | | | | |
| QF-005-2018 | Jesse Rabic | 2 | | $500.00 | 80,000 |
| Ins No | | | | | |
| QF 007 2017 | RNJ Trucking | 1 | | $500.00 | 80,000 |
| Ins No | | | | | |
| QF 008 -2017 | Daniel Gingerich. | 2 | | $500.00 | 80,000 |
| Ins. No | | | | | |
| QF 010-2017 | A Ubman Log Delivery | 2 | | $500.00 | 80,000 |
| Ins No | | | | | |
| QF 011 2017 | 12 Tree. | 8 | | $500. | 8,000 |
| Ins yes | | | | | |
| QF 009 2017 | Denoon Lumber | 12 | | 500.00 | 80,000 |
| Ins No | | | | | |
| QF 005-2017 | Ins. yes Gustavus Hardwoods | 10 | | $500.00 | 80,000 |
| QF 003 2017 | Ins yes Omega Logging | 2 | | $500.00 | 80,000 |
| QF 002-2017. | Ins yes. 1-2-Tree | 11 | | $500.00 | 80,000 |

~~All 3 operators Where on Same Road.~~
~~This Road Could hold 5 Ton~~ And Has Been raised.

18" Backtop   20 to 24" of Base

/0 Permits          (51)          $5,000.00   $98.00
                  Total Trucks      Total.    per Truck

FArmers

QF 006 - 2017     AdvANCiNG. ECO AG.     TRUCKS   Paid
    NO INS                              BlANK   $ 500

QF 002 - 2018     "     "     "     BlANK   $ 500.00
    NO. INS

LOOKS LiKE MAY
BE oNE FoR PermiTS
CAUSE   INBound LoAds

QF 004 2017.   CASE FArmc LLC.     TRUCKS.    $ 500.00
    INS YES                                    45
QF 001 - 2018     "     "     "     SAME TRUCKS
    INS. YES.                             52     2000.00

4 PermiTS                              52     $ 3500.00

67.30 AVG.
Per TRUCK

# General Haulers

|  |  |  | Trucks | Paid |
|---|---|---|---|---|
| AF 008 | 2017 | H.F. everett GAStoil | 4 | $50.00 |
| INS yes |  |  |  |  |
| AF 009 | 2017 | Bristol Disposal. | 5 | $50.00 |
| INS. yes |  |  |  |  |
| AF 002 | 2017 | miller yount PAving | 4 | $50.00 |
| INS yes |  |  | TOTAL 13 Trucks | 150.00 |
|  |  |  |  | 11.53 AV. per Truck |

Very First Permit.

King Bros

| AF 001 | 2017 | KmB INC. | 11 mixers | $50.00 |
|---|---|---|---|---|
| INS yes . |  |  | 11 Dumps. |  |
|  |  |  | 4 Block Truck, |  |
|  |  |  | 3 Lima. |  |
|  |  |  | 2 FLAT Beds |  |
|  |  |  | 7 Sem I. |  |
|  |  |  | 2 Septic Tank |  |
|  |  |  | 2 uTiLiTy |  |
|  |  |  | 1 Air Can |  |
|  | 17 Trailers. | | Trucks. | 50.00 |
|  |  |  | 42 |  |
|  |  |  | Aug 1.19 | per Truck |

General Haulers.

AF 026-2017        R&J Trucking Inc.

Nov. 13 2017 — To    Nov. 13 2017

Trucks  All Power on sheet

TOTAL        487 Trucks

+ 11

(498) Trucks

Paid. $100.00

Out Side of County.

Avg. Per Truck

. 20 Cents

Per Truck

# INSANE LOADS

Perm.t.
921 | 1 DAY     STEPHAN. DRP INC
1-17-18     $20.00

Gross weight     198,000

922. | 1 DAY     1-18-2018

See Email     BArber Trucking. INC.     $20.00
Bond     rush 50.00

Gross weight     192,000

923 | 1 DAY     JAN 25 2018.     20.00
rush 50.00

Gross weight.     192,000

3 Perm.TS.     $60.00 TO { 582,000 lb
MOVE { = 11
= 291 TON

A COST OF .20¢ per TON
21¢ TO

20¢ × 291 = $58.20

21¢ × 291 = $61.11

✝ All 3 NO INS INFO

# Ag./Loggers

AF 016 2017     BorTNick TracTor     Trucks.
                Ford Dealer.          4        100.00

OUT OF county                                  /yr
INS  yes.       SEPT 13 2017 To SEPT 13 2018 4    100.00
                                               25.00 per
                                                    AN. Tr.

AF 022 -2017     Select ENTepNises IN.
OUT OF county    OCT 10 2017 To OCT 10 2018    100.00
                        14 Trucks

LOADS. wood Products                           7.14 Per
+ Logging EQuiment.                                 Truck

✱     See NOTE     9-22-17                      /yr

INS yes.

AF 030 - 2017     CLiFTON Price. dBA. 2B TrucK.ag.
                  Dec. 8-2017  To  Dec 8 2018
                        7-Truck                50.00

NO INS.           /yr.                          7.14 AN.
                                                Per Truck
          LOADS.
Woody Lumber,  PALLETS, WATER, Logs. SCRAP wood.

# Summary Sheet

Loggers

| Permits | # Trucks | Paid | Av. Per Truck |
|---|---|---|---|
| (10) | 51 | $5,000.00 | $98.00 per Truck |

Farmers

| (4) | 52 | $3,500.00 | $67.30 |
|---|---|---|---|

Loggers + Farmers Together

| (14) | 103 | $8500.00 | $82.52 |
|---|---|---|---|

General Haulers

| (3) | 13 | $150.00 | $11.53 Av. |
|---|---|---|---|

Kings Bros.

| (1) | 42 | $50.00 | $1.19 Av. |
|---|---|---|---|

All Together

| (4) | 55 | $200.00 | $3.63 Av |
|---|---|---|---|

JOKE

| (1) | R+J Trucking  498 Trucks | $100.00 | ~20¢ per Truck |
|---|---|---|---|
| | Out of County | | |

# Summary Sheet

## Ag / Loggers.

Permits
(3)

| # Trucks | Paid. | Av. Per Trk. |
|----------|-------|--------------|
| 25 | 250.00 | $ 10.00 |

2 operators out of county.

(3)

## Insane Loads

| 3 Trucks. | Paid 60.00 | — $ 20.00 |

To move a total. 582,000 lb
    converted to tons.  291 Ton

        Cost about 20¢ per ton

# Thoughts

P1

1. Loggers. 10 perm.ts. 1/2 perm.ts NO INS. INFO.

2. Farmers 2 perm.ts. 1/2 perm.ts Don't Have Trucks Listed.

3. General Haulers are complete Perm.ts

4. R&J. Trucking is just a joke 20¢ per Truck

5. Insane Loads are a Bigger NO INS. INFO joke 20¢ per ton

6. You Have 2 Logger's with yearly Perm.ts. ??? So

All should Be ~~same~~ same Across ~~the~~ The Board.

# Thoughts

P2

(1) King Bros. CAN Haul with Dumps
To Build New Drive way Takes
About 1 TON gravel For 10 Feet wide
Drive Per Foot of ~~door~~ Legenth of Drive.

300' Drive AT 18 TON Loads. = 17 Loads
(AT) Kings Bro Price For Per m.T 50.00
comes out To. ($2.94 Per load) For
Permit

King has to Haul 17 Loads
And Hes Free Rest of year
To Haul.

AFTER King As Drive In Here
comes Saw mill or Logging crew.
2 months Later. Going To Be Ther For
5 months. So Thats $1000.00 2-@90 day
Permits. To Haul out. 27 Loads of Lumber
comes out To. $37.03 per load.

# NOW. King Hauled All His Loads
In One Day  17 Loads

Logger / Sawmill. 20 weeks To Haul 27 Loads
out.
+ while. Sawill + Logger works 20 weeks.
= 140 Days. King has. 42 Trucks so given

*Thoughts,*                    P. 3

Some Leway To him He's Aug Hauling
or Running. 30 Truck Aug. on road. gravel,
concrete, Block, sand, Top soil, Lima. septic Tanks
So each Truck runs 1 Load A Day   30 Loads

8 Hr Day   2 Load A Day   60 Loads
           3 Load A Day   90 Loads

So while Logger working on His Job
To Haul 27 Loads out. rember. 140 Days
Hes Thier

King Has Hauled.

1 Load A day. @ 30 Trucks X 140$^{Day}$ = 4,200 } yr Do
2  "    "    "    "   "    "   X 140.$^{Day}$ 8,400 } To Winter
3  "    "    "    "   "    "   X 140$^{Day}$ 12,600 }

A. 100 Ac woods could cut 1.6 million BF
        @ 9500 BF  =  168 Loads

A Aug. saw mill crew can cut Almost 1.8 million BF
In A year.  So we still under 200 Loads
For. A year.

Thiers No comperison on This

⑧ Looks Like All About The money
For. The. county ~~agas~~ Against the
Loggers + The Ag. operations.

# Tribune Chronicle

# Loggers cry foul over permits

## Say they're charged more than others to haul loads on roads



Tribune Chronicle / R. Michael Semple Logger Bill Spithaler, owner of Gustavus Firewoods and Hardwoods LLC, talks about the logging industry and road weight limits in Trumbull County. Loggers say new permit schedules and fees unfairly target the industry.

WARREN — The cost for permits to haul loads on roads in Trumbull County with weight limits unfairly targets the logging industry, an official with the Ohio Forestry Association said.

Case: 4:18-cv-01361-BYP  Doc #: 39-1  Filed: 04/15/19  34 of 78.  PageID #: 760

*"The permit system is being administered unfairly toward the forestry industry. Others are getting permits to operate semi-trucks on the same roads as the loggers are, but for much less money,"* said Brad Perkins, executive director of the association. *"This amounts to business profiling."*

But the reason why permits are more expensive for some isn't because of the kind of industry, said an official with the Trumbull County Engineer's Office, which supplies the permits. Rather, it's about where the business originates.

*"If someone is applying for a permit on a nonposted road, who may or may not deliver to a destination on a posted road, they pay $50. But if the business is originating on a weight-posted road, which means every load leaving that spot is going to travel on a posted road, that is $500,"* said Jack Simon, director of governmental affairs and special projects coordinator for the engineer's office. *"There is going to be more wear and tear on roads that have that kind of traffic."*

Businesses that transport material like aggregate, concrete and construction goods pay $50 per year for their fleet and must get a $1 million insurance policy for a yearlong annual supplier permit to travel on a county road posted with an 80,000 pound weight limit.

The fee is raised to $100 if the company is from out of the county.

A 90-day continuing operator permit — what loggers and other

Case: 4:18-cv-01361-BYP  Doc #: 39-1  Filed: 04/15/19  35 of 78.  PageID #: 761

agricultural haulers obtain — costs $520 every 90 days for each weight-posted road the business' fleet will travel on for the job. They also must get a $1 million insurance policy. The vehicles can weigh up to 80,000 pounds.

*"This means a gravel hauler and a logger working the same site, with the gravel hauler bringing in 10 to 15 loads of gravel and a logger taking away 10 to 15 loads of timber on trucks that are just as heavy, have to pay drastically different fees. And then, when the job is done and they find a new one, the logger has to file for another $500 permit, pay another $20 processing fee, while the gravel hauler doesn't. How is that equal?"* Perkins said.

Bill Spithaler, owner of Gustavus Firewoods and Hardwoods LLC, said a timber job that pays about $25,000 and takes him one year to complete requires him to spend more than $2,000 on four 90-day permits. He likened it to an 8 percent tax.

*"It cuts into profits really fast,"* said Spithaler, who has been in the industry in Trumbull County for more than 30 years.

Trumbull County Engineer Randy Smith said the cost of the permits is equal to the cost of the bonds before the fee schedule was put into place in 2017.

Before that, the county required a $50,000 bond, which equated to a $500 fee for the operator, and a $20 permit. Smith said the bonds had to be purchased for each route, for each job and couldn't be transferred to a new job.

But Spithaler said the bonds he got before the county's new system could be transferred to different routes and lasted a year, not 90 days. Simon said the 90-day permits can be transferred to other routes.

Perkins said he is researching how other counties handle the issue to present Smith with an alternative plan.

Don Schmucker, owner of Trumbull County Hardwoods in Middlefield, said doing business in Trumbull County was never a problem before the new system was put into place, and adapting to the new standards isn't a problem. What is, he said, is the process has not been straightforward.

*"Someone tells us to do one thing and then a few days later, it's a different thing or they change the road posting in the middle of a job. Or one guy says one way of doing things is OK and then another guy says it isn't. I get disgusted with the run-around,"* Schmucker said. *"Let us do our work."*

Also, some of the Amish, who account for upward of 90 percent of loggers in the county, believe they are being singled out, Schmucker said.

Smith said any business violating the road weight limits are subject to regulation and enforcement, which has nothing to do with being Amish or what industry the person works in.

The engineer's office owns portable scales used to weigh trucks, but they are operated by the Trumbull County Sheriff's Office.

Steven Gerberry, deputy administrative assistant / special projects coordinator for the engineer, said the office reviews roads based on observable issues or complaints in order to protect the roads from wear and tear.

*"It isn't fair to ask taxpayers to pay the cost of the logging industry tearing up the roads,"* Gerberry said.

Also, because the road is being reviewed, doesn't mean it will be given a weight limit, he said.

Loggers in Trumbull County review best practices with the forestry association, the local soil and water conservation districts and one another through the Northeastern Ohio Loggers Chapter to keep the roads and the environment from being damaged, Spithaler said.

*"The forestry association does not want Trumbull County's roads torn*

*up. We want them to haul legal, not overweight loads, but any system put in place needs to be administered equally,"* Perkins said. *"I think we can find a way to strengthen the access points and get the cost of the permit down so it is manageable for the industry."*

**Randy L. Smith, P.E., P.S.**
**TRUMBULL COUNTY ENGINEER**

*Gary W. Shaffer, P.E.*
Deputy Engineer
*Herb W. Laukhart, Jr.*
Director of Finance &
Personnel
*Tom W. Klejka*
Highway Superintendent

650 NORTH RIVER ROAD, N.W.  WARREN, OHIO 44483-2255
PHONE: 330-675-2640  FAX: 330-675-2642
www.countyengineer.com

March 23, 2018

The Ohio Forestry Association, Inc.
Brad Perkins, Executive Director
1100-H Brandywine Blvd
Zanesville, Ohio  43701-7303

Re:  Meeting with Jack Simon

Dear Mr. Perkins:

Please be advised that the undersigned acts as a legal advisor to the Trumbull County Engineers
Office.  It is my understanding that in a recent meeting with Jack Simon from our office, you
relayed to him that there may be some concern from members of your organization that the
Engineers Office is targeting individuals and companies engaged in the logging business and at
the same time giving preferential treatment to individuals and companies engaged in agriculture.
Jack relayed to me that his meeting with you was both cordial and productive but I thought that I
could best give a simple response to the allegations or concerns made by your members.

I would like to state and assure you that it is the Trumbull County Sheriff's Department and not
the Trumbull County Engineers Office that operates the scales and makes decisions as to which
vehicles and or trailers are to be weighed.  The Engineers Office does not have supervisory
authority over the Sheriff's Department or the deputies employed by it.   If any of your members
feel that they have been treated unfairly and/or targeted by the Sheriff's Department, they may
direct their complaints to the Sheriff's Department.

If we at the Trumbull County Engineers Office can be of any further assistance on this issue,
please feel free to contact me.

Very truly yours,

Matthew J. Blair, esq.

Cc:    Randy L. Smith

*Randy L. Smith*, P.E., P.S.
TRUMBULL COUNTY ENGINEER

*Gary W. Shaffer, P.E.*
Deputy Engineer
*Herb W. Laukhart, Jr.*
Director of Finance &
Personnel
*Tom W. Klejka*
Highway Superintendent

650 NORTH RIVER ROAD, N.W.  WARREN, OHIO 44483-2255
PHONE: 330-675-2640  FAX: 330-675-2642
www.countyengineer.com

March 30, 2018

The Ohio Forestry Association, Inc.
Brad Perkins, Executive Director
1100-H Brandywine Blvd
Zanesville, Ohio  43701-7303

Re:  Continued allegations against the Engineers Office

Dear Mr. Perkins:

I am attaching a copy of a letter mailed to you on March 23, 2018.  I was quite surprised to learn that Engineer Smith and other representatives from the Engineers Office met with reporter Renee Fox of the Warren Tribune Chronicle on March 29, 2018 to address the same issues which were the topic of my March 23, 2018 letter.

It has been relayed to me that Ms. Fox indicated that you and another individual by the name of Bill Spithaler had contacted the newspaper and reasserted the same accusations that had been made to Jack Simon at the Trumbull County Engineers Office and addressed by me in my first letter to you.  I will give you the benefit of the doubt that your communication with Renee Fox predated my letter but because of the now public allegations I feel obligated as Randy Smith's representative to again address the same allegations.

You should note that the Engineer is now accustomed to individuals utilizing the print media for purposes of attacking him when he does not agree to act on an issue that he believes lacks merit and is not in the best interest of the tax payers.  As you know, the Engineer and his staff have extended you the courtesy of multiple meetings and phone communications in regard to the permitting process and associated costs.  Given your allegations it would appear that you are of the opinion that existing permitting fees in Trumbull County are exorbitant in comparison to other Ohio counties.  In response to your allegations, I requested Jack Simon to review this issue and in summary after reviewing the data collected by Mr. Simon from our office, it would appear that the fee schedule established by the Trumbull County Engineers Office is proportionate to other counties in our region and in some instances far more favorable.  I can only assume that given your position that you are well aware of these facts which raises the question of what could possibility be the motivation for initiating such a public attack on Engineer Smith.

I should advise you that I have been contacted by Mr. Smiths private attorney requesting that I provide an explanation as to whether I believe that there is a legitimate reason for the allegations being made to the press.  Again, I can only assume that your communications with the press predated my March 23, 2018 letter.  I'm sure you can appreciate Engineer Smith's concern about you and Mr. Spithaler acting in concert making allegations against him to the press.

Mr. Spithaler seems to have a personal agenda when it comes to Engineer Smith. Following a verbal confrontation during the summer of 2017, Engineer Smith filed a police report to document the incident. The Trumbull County Engineers Office is currently dealing with multiple public records requests as well as multiple allegations from Mr. Spithaler via email. Our office will of course comply with all statutory requirements regarding public records requests but the content and frequency of Mr. Spithaler's current and past communications are troubling.

In closing I would like to remind you of the long standing/pre-existing permitting requirements at the Trumbull County Engineers Office. The pre-existing process required a road bond in the amount of $50,000, liability insurance of one million dollars, and a processing fee of $25. I'm sure you will agree that the current fee schedule is far less burdensome to your clients. That being said, I have reminded the Engineer that we had far less complaints under the prior permitting process than we are experiencing under the current permitting process. One option to eliminate allegations of discriminatory treatment would be simply to revert back to the prior permitting requirements.

I would also again like to remind you that it is the Trumbull County Sheriff's Department and not the Trumbull County Engineer that determines which trucks and trailers will be weighed and which locations are selected for placing scales.

Very truly yours,

Matthew J. Blair, esq.

Cc:     Randy L. Smith

## Brad Perkins

| | |
|---|---|
| From: | Brad Perkins |
| Sent: | Wednesday, April 11, 2018 8:54 AM |
| To: | Jack Simon |
| Cc: | Steven J. Gerberry |
| Subject: | Access Points and Road Use for Logging |
| Attachments: | Logging Operations SOP Final Document 3-7-17.pdf; Access Policy Example.pdf |

Good Morning Jack,

During my last visit, you mentioned that the road access points were the area where the most significant road damage was seen, not necessarily on the roadways themselves. I have attached a couple documents being used by another county to address this position. One is an "Access Policy Example", which covers access points for all activities for the entire county. The second one titled "Logging Operations SOP" specifically addresses logging operations. Trumbull County may already have an "Access" program; I'm not sure.

My office worked with the county engineer on the Logging Operations SOP. We ultimately didn't give it our full endorsement because we were concerned about their penalty clauses at the end of the document, but I feel it might have merit to consider some options like this for Trumbull County. One of the major provisions of this document is that the access point must be constructed to the Access Policy standards, and that any Temporary Access Points must be reclaimed to the engineers office satisfaction before it is vacated.

Another problem that sometimes comes up with loggers is that they load their trucks while the truck is sitting on the township or county road. This policy discourages that of course, but leaves it open to the possibility that if there is no option for an access for the truck to get off the road, the county could let them load on the road with proper safety precautions (signage, flaggers, etc).

We also know that it is difficult for a county or township to collect bond money or direct money from an individual to repair a damaged road because it is nearly impossible to prove that the road damage was caused by one entity when others are also using the road. It is not hard however, to prove damage to the road at an access point where there is only one or two entities using the access point.

**I would like to suggest that Trumbull County and its townships address their road use concerns by having a consistent fee for posted weight limit roads for <u>all users</u> ($50 or $100 for Annual Permit <u>plus</u> Commercial Liability <u>plus</u> continue to agree to be responsible for damages), then address the Access Point issues with another permit fee per access point (another $50 or $100). This would add consistency to road use permitting (trucks are trucks and weight is weight) while putting responsibility for the points of most damage on those using it (loggers, farmers, subdivision builders, miners, etc.).**

I would appreciate you thoughts and consideration on this, as I am still trying to help solve the differences between factions in Trumbull County as it pertains to road use. If you have interest in the preparation of the two documents I attached, I can put you in touch with the county engineer that developed them.

Also, I called and had a conversation with Matthew Blair yesterday to discuss a few points in the letters he sent me. He may call me tomorrow to continue that discussion. As always, I am open to discuss these concerns with anyone that is interested.

Thanks!

# COSHOCTON COUNTY ENGINEER
(740) 622-2135   FAX: (740) 623-6512

### Frederick T. Wachtel, P.E., P.S.

3/7/17

## Guidance for Logging Operators

As a service to our many logging operators, we have compiled this guidance document of the various rules that are already in place and would apply to logging operations.

All access points constructed within Coshocton County must comply with the Coshocton County Access Management Regulations (Smart Growth Transportation Policy, February 1, 2009), as adopted by the Coshocton County Commissioners.  The Coshocton County Engineer is responsible for the enforcement of these regulations on all county and township roads.  When logging in Coshocton County, whether on township, county or state route roads, the following criteria are to be met:

1. We recommend that you notify the Coshocton County Engineer's Office, (740) 622-2135, if on county or township roads, and ODOT, (740) 622-2741, if on state routes, prior to conducting any logging site operations.
2. **All log loading activities** should take place outside of the public road right-of-way.  Activities taking place in close proximity to the road pose a safety hazard to motorists and to the personnel loading the trucks.  And, it is against the law to impede traffic on a public roadway (ORC 4511.22).
   a. The Right-of-Way is **30'** from the center of the road on both sides of the road, a total of **60'** wide.
   b. Any activity proposed to take place closer to the road will require the approval of the County Engineer.
3. Logs may not be staged within the right-of-way.  Objects within the right-of-way pose a safety hazard to motorists.
4. The property owner of record is ultimately responsible for obtaining the proper access permit **prior** to the start of logging operations on their property.  The logging company may act as the landowner's agent, however the landowner will be required to sign the access permit application.
   a. Temporary Access Permit, Minimum Volume (MinV) ($25.00)
      i. Temporary Access Permit means that an access will be constructed to the specifications of the Smart Growth Transportation Policy for a limited amount of time (duration of logging said site).  Upon completion of the logging operation at said site, the access point will be removed and reclaimed, to the satisfaction of the Coshocton County Engineer.  The site may not be used for further access without a new permit.

23194 CR 621 • Coshocton, Ohio 43812

# COSHOCTON COUNTY ENGINEER

(740) 622-2135   FAX: (740) 623-6512

### Frederick T. Wachtel, P.E., P.S.

    b.  Permanent Access Permit, MinV ($25.00)

        i.  Permanent Access Permit means that the access will be constructed to the specifications of the Smart Growth Transportation Policy and will be left in place after the completion of the logging operation at said site.  This is not for residential use.

    c.  Permanent Access Permit, Very Low Volume (VLV) ($50)

        i.  Permanent Access Permit means that the access will be constructed to the specifications of the Smart Growth Transportation Policy and will be left in place after the completion of the logging operation at said site.  This is for residential use.

5. Once the permit is applied for, a member of the Coshocton County Engineer's Office will conduct a site visit and contact the permit applicant to issue the preliminary approval.

6. After the permit is approved, the access point should be constructed prior to beginning logging operations on the site.

7. Upon completion of the logging operations and access point reclamation, if required, the permit applicant must contact the Coshocton County Engineer's Office so that a site visit may be conducted for final approval of the permit.

8. Throughout the entire logging operation it is the responsibility of the logging company to maintain a clean roadway, free of mud and debris.  Mud and debris must not be drug out onto the road surface while prepping, transporting or removing equipment from the property.

9. Penalties for not acquiring a permit per the Smart Growth Transportation Policy, Appendix D are as follows:

    a.  Penalty for No Permit   $250.00

    b.  Purposely Violated Rules   $500.00 per day

_____

Frederick T. Wachtel, P.E., P.S.
Coshocton County Engineer

_____3/14/17_____
Date

23194 CR 621 ▪ Coshocton, Ohio 43812

# Smart Growth Transportation Policy

## A Guide to Access Management

Coshocton County, Ohio

Adopted by the Coshocton County Commissioners
Effective: February 1, 2009

1

# ARTICLE ONE
## Authority

These regulations are adopted pursuant to the authority granted to Boards of County Commissioners by Ohio Revised Code Chapter 5552.

# ARTICLE TWO
## Purpose

This Smart Growth Transportation Policy has been adopted for the purposes of promoting traffic safety and efficiency, maintaining proper traffic capacity and traffic flow, reducing vehicular collision frequency, minimizing the future expenditure of public revenues, and improving the design and location of access connections to county and township roads while at the same time providing necessary and reasonable ingress and egress to properties along those roads.

This Board of County Commissioners finds and determines that these regulations establish the minimum standards necessary to properly manage access to county and township roads in Coshocton County and to carry out the purpose and intent of Revised Code Chapter 5552.

# ARTICLE THREE
## Implementation and Administration

The effective date of these regulations is February 1, 2009. The Coshocton County Engineer is responsible for implementing and administering these regulations.

# ARTICLE FOUR
## Applicability

A. These regulations shall apply to all access connections designed or intended for motor vehicle, bicycle, equestrian or pedestrian use to county or township roads constructed on or after the effective date of these regulations. This includes new public roads, new private roads, and new driveways. They shall also apply to all existing access connections for the purposes described in this Article whenever the land use or the access classifications of such existing access connections change or whenever the existing access is upgraded by reconstruction, relocation, modification, or expansion.

2

B. These regulations apply to the original approval of platted major subdivisions and are used in conjunction with the Coshocton County Subdivision Regulations. They also apply to minor subdivisions approved without a plat under the procedure contained in R.C. 711.131, large lot developments, and to any point of access from a parcel of land not otherwise subject to regulation under Chapter 711 Revised Code of Ohio.

C. These regulations apply to the siting of public roads, private roads, and driveway connections on all county and township roads in Coshocton County. These regulations are intended to work in conjunction with the regulations of the Coshocton County Subdivision Regulations as adopted by the Coshocton County Regional Planning Commission.

## ARTICLE FIVE

### Definitions

A. **Access Classification:** A classification system that defines driveways, private roads, and public roads according to their purpose and use.

1. **Minimum Volume (MV) access point**
   - field drive – provides access to agriculture lands and principally used by farm equipment
   - utility drive – provides access to public utility facilities, such as well fields, regulator sites, water storage tanks, etc.

2. **Very Low Volume (VLV) access point**
   - farm drive – provides access to farm buildings, including a single home
   - single family residence drive
   - single family common access drive serving five or fewer residences
   - multi-family residence drive serving five or fewer residential units
   - walking, jogging, biking or equestrian trails

3. **Low Volume (LV) access point**
   - less than 100 trip ends in the peak hour

4. **Medium Volume (MV) access point**
   - 100 or more but less than 200 trip ends in the peak hour

5. **High Volume (HV) access point**
   - 200 or more trip ends in the peak hour

3

B. **Access Connection:** Any connection to a road or street which permits access to or from the road or street by vehicles, equipment, cars, trucks, buses, motorcycles, bicycles, pedestrians, horses, or other animals, for the purpose of crossing the road or street or accessing the road or street. An access connection may be a road, street, access point, or trail.

C. **Access point:** An access connection including driveways, private and public roads or streets.

D. **Lot Split Approval:** The process of approving Minor Subdivisions (Lot Splits) in accordance with the Subdivision Regulations as authorized by R.C. 711.131.

E. **Road Classification:** A ranking system for roadways used to determine the appropriate degree of access management regulation in order to promote public safety and growth and prevent congestion. For the purpose of these regulations, all roads on the County and Township road systems shall be placed into one of the following classifications and delineated on a map:

- Major Collector Roads
- Minor Collector Roads
- Local Roads
- Collector Streets
- Local Streets

The County Commissioners, in conjunction with the County Engineer, shall periodically review this map to determine if any changes in classification need to be made.

F. **Stopping Sight Distance (SSD):** The distance required by a driver of a vehicle, traveling at a given speed, to bring the vehicle to a stop after an object on a roadway becomes visible. Stopping Sight Distance shall be as defined in the most recent edition of the Location and Design Manual of the Ohio Department of Transportation for all roads with an Average Daily Traffic (ADT) $\geq 400$; for an ADT $\leq 400$ the most recent AASHTO Guidelines Very Low Volume Local Roads shall be utilized. Where there is no journalized reduced speed limit, and it is obvious that the pace of the road in the vicinity of the proposed split, or the proposed access connection, is less than 55 mph, the County Engineer shall determine the reasonable pace in the area and will apply the appropriate Stopping Sight Distance that corresponds to the determined pace.

G. **Subdivision Regulations:** The Coshocton County Subdivision Regulations as enacted and amended by the Coshocton County Regional Planning Commission and the Coshocton County Commissioners.

4

H. **Technical Design Standards:**  The Technical Design Standards of the Coshocton County Engineer are located in Appendix A of these regulations.

Definitions from the Coshocton County Subdivision Regulations are incorporated by reference into these regulations to the extent not inconsistent with the above definitions.

# ARTICLE SIX
## Preliminary Access Approval

A. Prior to any lot split approval, or prior to the transfer of any lot or parcel of land which is not subject to a lot split approval, the Coshocton County Engineer shall, upon receipt of a completed application (see Appendix B), issue a preliminary access approval. The preliminary access approval will indicate those locations along the lot for which access is acceptable and in conformance with these regulations. The preliminary access approval shall be issued within seven working days following submission of all the information required by these regulations.

B. For preliminary access approval to an existing parcel, or for access permit issuance when no preliminary access approval was required, the Coshocton County Engineer may require any or all of the following information be shown on an accurate drawing:

1. Distances from the side property lines to the nearest adjacent access points, and their respective use.
2. Location of any access points across from the property and their current use.
3. Location of any access points on the property and their present use.
4. Available sight distance (ASD) and required stopping sight distance (SSD).
5. Required access point spacing.
6. Location of proposed access points, if known.
7. Other information as required by the Coshocton County Engineer.

Depending upon the classification of the public road and the proposed access classification, the County Engineer may require additional information that will require the services of either a professional engineer or a professional surveyor.

# ARTICLE SEVEN
## Access Permits

A. Prior to the issuance of a new address, or prior to the construction of a access point in those situations not requiring a new address, the Coshocton County Engineer shall issue an access permit. The permit will be for access at a location for which a preliminary access approval was previously granted, or at a location that is otherwise

5

in conformance with these regulations.  In those situations where no preliminary access approval was issued, the Coshocton County Engineer may require submission of the Preliminary Access Approval information.  If the access is from a township road the County Engineer shall notify the Township Trustees of the proposed action.

B.  Permits issued may include interim or temporary permits and shall prescribe the permitted uses and any limitations or conditions of the permit as well as the access classification.  New permits are required whenever the land use or the access classifications of existing access points change or whenever existing access points are upgraded, including widening.

C.  For Minimum Volume and Very Low Volume driveways, access permits shall be issued within seven working days following submission of all required information.

D.  For all other access point classifications, access permits shall be issued within thirty working days following submission of all information required by these regulations.

E.  Any access permit which is not acted upon within the above time frames shall be deemed approved and shall be issued in accordance with the information submitted.

F.  An access permit fee (Appendix D), as established by the Board of Commissioners to cover the cost of administering these regulations, shall accompany the access permit application.

G.  Access permits shall expire if the access point is not constructed within one year of the date of access permit issuance.


## ARTICLE EIGHT
### Variances and Appeals

A.  The Board of Commissioners shall designate the Executive Committee of the Coshocton County Regional Planning Commission, less the County Engineer, as the Board of Appeals for the Smart Growth Transportation Policy.  The Board of Appeals shall hear and decide variances to these regulations in accordance with the standards of this Article.  It may also hear appeals where it is alleged that the Coshocton County Engineer made an error in any order, requirement, decision or determination in the enforcement of these access management regulations.

B.  Variances may be granted by the Board of Appeals for all classes of access points.  Variances are appropriate if not contrary to the public interest where, owing to special conditions, a literal enforcement of the regulations will result in unnecessary hardship or a negative impact on economic conditions, and such that the spirit of the regulations will be observed and substantial justice done.

6

C.  In the granting of variances in accordance with the standards on paragraph B, the Board of Appeals may consider the following:

1.  Whether or not granting the variance causes the loss of jobs or inability to attract new jobs.
2.  Whether not granting the variance would deny all reasonable access.
3.  Whether granting the variance would endanger the public safety.
4.  Whether the hardship was self-created.
5.  Whether granting the variance would hinder traffic safety or the proper operation of the public road.
6.  Whether granting the variance would be consistent with the purpose of these regulations.
7.  Whether all feasible access options except granting a variance have been considered.

D.  The applicants for variances may provide evidence of unique or special conditions that make the strict application of these regulations impractical or impossible.  Such evidence may include:

1.  Job creation or job retention.
2.  Indirect or restricted access cannot be obtained.
3.  No engineering or construction solutions can be applied to mitigate the condition.
4.  No alternative access is available.

E.  All applications for appeals or variances shall be made on the form provided (Appendix C) and accompanied by the fee established by the Board of County Commissioners.  Appeals shall be filed within thirty days of the County Engineer's decision.

F.  A verbatim record of the hearing shall be held; all testimony shall be taken under oath.  The applicant shall have the right to present witnesses and evidence and to cross-examine witnesses who testify adverse to his/her position.  The Board shall render its decision in writing within thirty days of the conclusion of the hearing.

G.  Appeals to decisions of the Board of Appeals for the Smart Growth Transportation Policy shall be in accordance with Chapter 2506 Revised Code of Ohio.

7

# ARTICLE NINE
## Enforcement

A. If any access point is installed contrary to these regulations, the County Engineer shall notify the property owner in writing. The notification shall identify the problem with the access point and establish a 15 day period for the property owner to correct the problem. If the problem is not corrected within 15 days, the County Engineer may block the access at the point that it enters a public road right-of-way.

B. Access points constructed without a valid permit will be required to be brought into compliance with these regulations, and will be required to pay a penalty fee as established by the County Commissioners (see Appendix D.)

C. In addition, whoever purposely violates any provision of these regulations may be fined upon conviction not more than five hundred dollars for each offense. Each day of violation is a separate offense.

# ARTICLE TEN
## Standards

A. The arrangement, character, extent, width, grade, and location of all access connections shall conform to these regulations and shall be considered in their relation to existing and planned roads, streets and access points, topographical conditions, and public convenience and safety and the proposed uses of the land to be served by such access connections.

    1. The requirements of these regulations vary depending upon both the road classification and the classification of the proposed access.

    2. The provisions of any existing or future Smart Growth Transportation Policy prepared for a specific road or portion of a road shall apply. The applicable requirements of the Subdivision Regulations and Appendix A shall also apply.

    3. Minimum Volume Access Points

       New access points or access point upgrades shall be located no closer than 25 feet from an existing or proposed access point and no closer than 80 feet from an existing or proposed road or street.

4. Very Low Volume Access Points

For the purpose of siting new access points for parcels over 5.0 acres additional    VLV drives will be permitted if spacing and site distance requirements can be met.

a. ***Along Major Collector Roads:*** No new VLV access points or access point upgrades shall be permitted along Major Collector Roads from parcels where access is available or can be made available from a lower classification road or street, or from a common access point.

Where a new VLV access point or access point upgrade along a Major Collector Road is the only option, it shall be located no closer than 495 feet from an existing or proposed access point or from an existing or proposed road or street. No more than one access point shall be permitted per parcel.

b. ***Along Minor Collector Roads:*** No new VLV access points or access point upgrades shall be permitted along a Minor Collector Road from a parcel where access is available or can be made available from a lower classification road or street.

Where a new VLV access point or access point upgrade along a Minor Collector Road is the only option, it shall be located no closer than 100 feet from an existing or proposed access point or from an existing or proposed road or street. No more than one access point shall be permitted per parcel, although additional minimum volume access points may be permitted.

c. ***Along Local Roads:*** No more than one VLV access point or access point upgrade shall be permitted along a Local Road per parcel. They shall be located no closer than 100 feet from an existing or proposed access point or from an existing or proposed road or street. Additional minimum volume drives may be permitted.

d. ***Along Collector Streets:*** No more than one VLV access point or access point upgrade shall be permitted per parcel. New access points or access point upgrades shall be located no closer than 40 feet from an existing or proposed access point or no closer than 100 feet from an existing or proposed road or street. Additional minimum volume drives may be permitted.

e. ***Along Local Streets:*** No more than one VLV access point or access point upgrade shall be permitted per parcel. New access points or access point upgrades shall be located no closer than 25 feet from an existing or proposed access point or no closer than 80 feet from an existing or proposed road or street. Additional minimum volume drives may be permitted.

9

5. <u>Low, Medium and High Volume Access Points</u>

    a. ***Along Major Collector Roads:*** No new L,M,HV access points or access point upgrades shall be permitted along a Major Collector Road from a parcel where access is available or can be made available from a lower classification road or street or from a common access point.

       Where a new L,M,HV access point or access point upgrade along a Major Collector Road is the only option, it shall be located no closer than 495 feet from an existing or proposed access point or from an existing or proposed road or street. No more than one access point shall be permitted per parcel.

       For new L,M,HV access points or access point upgrades that will warrant traffic signals, the spacing from the nearest existing or proposed signalized intersection shall be no closer than 2640 feet. From the nearest existing or proposed un-signalized intersection, the new access point or access point upgrade shall be no closer than 1320 feet.

    b. ***Along Minor Collector Roads:*** No more than one L,M,HV access point or access point upgrade shall be permitted per parcel unless: 1) the parcel is located at an intersection of two Minor Collector roads or at an intersection of a Minor Collector Road and a Local Road and one of the two access points is "right in/right out only" and is located on a Minor Collector, or 2) the access point spacing is at least 360 feet and one of the two access points is "right in/right out only."

       New L,M,HV access points or access point upgrades along a Minor Collector Road shall be located no closer than 360 feet from an existing or proposed road or street or from an existing or proposed access point.

       For new L,M,HV access points or access point upgrades that will warrant traffic signals, the spacing from the nearest existing or proposed signalized intersection shall be no closer than 1760 feet. The new access point shall be no closer than 880 feet from the nearest existing or proposed un-signalized road or street intersection.

    c. ***Along Local Roads:*** No more than one L,M,HV access point or access point upgrade shall be permitted per parcel except that two access points may be allowed if one of the two access points is "right in/right out" and the access point spacing is at least 250 feet.

       New L,M,HV access points or access point upgrades along a Local Road shall be located no closer than 250 feet from an existing or proposed road or street or from an existing or proposed access point.

10

For new L,M,HV access points or access point upgrades that will warrant traffic signals, the spacing from the nearest existing or proposed signalized intersection shall be no closer than 1320 feet, or from the nearest existing or proposed un-signalized road or street intersection no closer than 660 feet.

d. ***Along Local and Collector Streets:*** L,M,HV access points and access point upgrades shall meet the requirements for Local Roads.

e. ***Note:*** The County Engineer will evaluate alternative proposals for L,M,HV access points on all roads except Major Collectors.  The applicant who wishes have an alternative considered must schedule a consultation with the County Engineer to discuss the merits of their proposal and the required justification for any such alternative.

6. General

a. All access points or access point upgrades shall meet or exceed the requirements of these regulations unless otherwise approved by variance provisions. The location of all access connections shall permit adequate horizontal and vertical sight distance as specified in the Appendix A based on the stopping sight distance for the legal speed limit or the reasonable pace at the location of the access point.

b. Common access driveways and/or cross access or through access easements may be required and are permitted to satisfy the requirements of these regulations.  Proposed common access driveways and/or cross access or through access easements shall be in accordance with the Appendix E - Common Access Drive Regulations

c. Existing access points in which there is no change of use shall be exempt from the Smart Growth Transportation Policy.  The following are conditions in which an access point shall be brought into conformance:

1. When new access permits are requested;
2. When access point upgrades are proposed;
3. When significant increases in trip generation are planned for the access point;
4. If the use served by the nonconforming access point discontinues for a consecutive period of 2 years; or
5. When there is a change of use of the property access.

d. To the greatest extent possible, developments shall incorporate unified access and circulation systems.  Where a proposed development abuts to and connects, through internal circulation, to an existing subdivision or development which has access to a Collector or Local Road, the proposed

11

development shall, when necessary, upgrade the intersection at the Collector or Local Road and the existing subdivision's or development's access to the Collector or Local Road.

e.   Whenever a new access point or access point upgrade is permitted, the property owner shall eliminate all pre-existing non-conforming access points upon completion of the new access point or access point upgrade as required by the County Engineer  No new access points or access point upgrades shall be permitted for parcels where access rights have been previously extinguished or acquired by a governmental body.

f.   The County Engineer may require a Traffic Impact Study for any Medium Volume or High Volume access point and may require a Traffic Impact Study for any Low Volume access point.  The Traffic Impact Study shall be prepared in accordance with the requirements of the Ohio Department of Transportation Local and Design Manual and the County Engineer.

## ARTICLE ELEVEN
### Revisions to this Plan

From time to time it may become necessary to revise these regulations.  The following procedure outlines the process to revise the Smart Growth Transportation Policy.

1.   The Coshocton County Regional Planning Commission shall petition the County Commissioners to amend the Smart Growth Transportation Policy.
2.   The petition shall outline the revisions or new regulations to be considered.
3.   The County Commissioners shall either accept or dismiss said petition within 30 days of receipt of said petition.
4.   Should the Commissioners accept the petition, they will enter it into their Commissioners' Journal and they shall re-activate the Advisory Committee as constituted in Section 5552.04 of the Ohio Revised Code within 60 days of the journalization.
5.   The Advisory Committee, from the date of the re-activation, shall have 75 days to review said petition and to present their recommendations to the County Commissioners.
6.   The County Commissioners shall act upon the Advisory Committee's recommendations within 60 days after receipt.  The Commissioners shall hold Public Hearings as outlined in Section 5552.06 of the Ohio Revised Code
7.   Should the Commissioners adopt the revisions or new regulations, they will become effective on the 31st day following their adoption, unless another date is indicated in the regulations.  A public notice of their adoption will be published as outlined in Section 5552.09 of the Ohio revised Code.

12

# ARTICLE Twelve
## Adoption

These regulations are adopted by resolution of the Board of County Commissioners on December 31, 2008 after public hearings were held on November 26, 2008 and December 29, 2008.

BOARD OF COUNTY COMMISSIONERS
COSHOCTON COUNTY, OHIO

ATTEST:

Clerk

13

# STOPPING SIGHT DISTANCE CHARTS
### Ohio Department of Transportation (January 2006)
### Guidelines for Average Daily Traffic ≥ 400

| Design Speed (mph) | Design SSD (feet) | Design Speed (mph) | Design SSD (feet) |
|---|---|---|---|
| 20 | 115 | 46 | 375 |
| 21 | 120 | 47 | 385 |
| 22 | 130 | 48 | 400 |
| 23 | 140 | 49 | 415 |
| 24 | 145 | 50 | 425 |
| 25 | 155 | 51 | 440 |
| 26 | 165 | 52 | 455 |
| 27 | 170 | 53 | 465 |
| 28 | 180 | 54 | 480 |
| 29 | 190 | 55 | 495 |
| 30 | 200 | 56 | 510 |
| 31 | 210 | 57 | 525 |
| 32 | 220 | 58 | 540 |
| 33 | 230 | 59 | 555 |
| 34 | 240 | 60 | 570 |
| 35 | 250 | 61 | 585 |
| 36 | 260 | 62 | 600 |
| 37 | 270 | 63 | 615 |
| 38 | 280 | 64 | 630 |
| 39 | 290 | 65 | 645 |
| 40 | 305 | 66 | 665 |
| 41 | 315 | 67 | 680 |
| 42 | 325 | 68 | 695 |
| 43 | 340 | 69 | 715 |
| 44 | 350 | 70 | 730 |
| 45 | 360 | | |
| Height on Eye 3.50' | Height of Object 2.00' | $SSD=1.47vt + 1.075v^2/a$ | |

SSD=stopping sight distance, ft;   t = brake reaction time, 2.5s;   v = design speed, mph;   a = deceleration rate, 11.2ft/s²


## AASHTO

### Guidelines for Average Daily Traffic ≤ 400

| Design Speed (mph) | All Locations (0-100 veh/day) | Lower Risk Locations (100-250 veh/day) | Higher Risk Locations (100-250 veh/day) | All Locations (250-400 veh/day) |
|---|---|---|---|---|
| 15 | 65' | 65' | 65' | 65' |
| 20 | 90' | 90' | 95' | 95' |
| 25 | 115' | 115' | 125' | 125' |
| 30 | 135' | 135' | 165' | 165' |
| 35 | 170' | 170' | 205' | 205' |
| 40 | 215' | 215' | 250' | 250' |
| 45 | 260' | 260' | 300' | 300' |
| 50 | 310' | 310' | 350' | 350' |
| 55 | 365' | 365' | 405' | 405' |
| 60 | 435' | 435' | 470' | 470' |

Lower Risk Locations –away from intersections, narrow bridges, railroad-highway grade crossings, sharp curves, and steep downgrades
Higher Risk Locations – near intersections, narrow bridges, railroad-highway grade crossings, or in advance of sharp curves or steep downgrades

Appendix A. – Technical Design Standards

## A. General Information

The construction and repair of access points to property fronting on county and township roads in Coshocton County shall be done only with the written permission of the Coshocton County Engineer. Permission is also required for the paving of that portion of an existing drive that lies within the road right-of-way. All expenses associated with any of this permitted activity are solely the responsibility of the permittee.

In all cases a field check will be made to observe the existing conditions at the proposed drive location. Because the geometrics of many roads in Coshocton County limits the sight distance, special attention needs to be given to the clear-sight distance for approaching traffic. Location of access points shall also comply with the spacing requirements outlined in these regulations based upon the classification of the drive and the classification of the road.

## B. Design Requirements

The construction of any access point must be in accordance with the minimum standards shown on the Coshocton County Engineer's Driveway Details. All drives shall be graded such that at least 10' of the approach to the road is uphill. No drives shall be permitted to drain directly onto the road.

When conditions warrant, the Coshocton County Engineer will require the installation of a drive culvert in the roadside ditch. The County Engineer will advise the permittee of the size culvert required. The minimum size of the culvert shall be 12" in diameter by 20' long and the culvert will be of a material acceptable to the County Engineer. When site conditions require a structure larger than a culvert, the property owner will submit plans for said structure to the County Engineer for review, comment, and approval. The installation, maintenance, and replacement of any driveway pipes or structures are the responsibility of the property owner.

Drives shall be constructed with a crown and side-ditches to direct any surface water into the roadside ditches and not directly onto the road. The property owner shall be responsible for maintaining these improvements.

Driveway aprons may be constructed of concrete, asphalt, limestone, or gravel. Concrete aprons shall be a minimum of 6 inches thick for residential, and 7 inches for commercial drives. Concrete aprons shall extend only to the edge of the aggregate berm and cannot be higher than the edge of the pavement. No curbs or headwalls that could create a hazard or hamper maintenance operations such as snow plowing, will be allowed in the shoulder area. Asphalt aprons may extend to the pavement edge but not above it.

The Coshocton County Engineer's Driveway Details attached shows the general requirements for all drives.

## C. Construction Inspection

Prior to any construction the permittee shall notify the County Engineer's Office at least one work day in advance of any proposed activity. An inspector from the Engineer's Office will determine from the nature and complexity of the project whether his continual presence is needed. If the scheduled work needs to be canceled, the permittee shall notify the County Engineer at least one hour prior to the requested inspection time.

Failure to give notice of construction will be considered a violation of the permit and will be just cause for the County Engineer to request the Board of County Commissioners to take appropriate action to stop the construction. Repeated failure to notify the Engineer when work is being performed may result in the denial of future permit applications.

The inspector's normal work hours are 7:30 to 4:00, Monday through Friday. When inspection is required at times other than these, the permittee will be charged the inspector's hourly rate at time and a half. Work requiring inspection outside the normal work day may be performed only if an inspector is available.

## D. Construction

During construction, the roadway shall be kept clear of all dirt, stones and debris.

During the progress of the work, barriers shall be erected and maintained for the protection of the traveling public, and the same shall be properly lighted at night. No excavation shall be made or obstacle placed in the roadway that might interfere with travel on the road. The permittee shall be responsible for all damages to persons or property due to any work done under this permit.

If, in the opinion of the County Engineer, any work done under this permit interferes with the road drainage in any way, he may require the permittee to construct catch basins, outlets, and other improvements to remedy the situation. All such work will be the responsibility of the permittee.

Backfill for culvert installations shall be "free dumping" No. 57 limestone or gravel. The 57's shall be brought up to within 12" of the finished grade. The remainder of the excavation shall be backfilled with No. 304 aggregate, in layers not to exceed 6 inches, loose measurement. Each lift shall be tamped or rolled. Final surface course will be installed as per the approved permit.

In all cases where a permit is granted for construction activity within the road right-of-way, it shall be the permittee's responsibility to restore the disturbed area to a condition equal to or better than it was originally.

## E. Maintenance

The property owner is required to maintain the drive as originally constructed. Drive culverts that have deteriorated or have been damaged causing blockage in the roadside ditch will be required to be repaired or replaced. When the County Engineer or the Township Trustees determine that repair or replacement of an existing drive culvert is necessary, written notice will be given to the property owner. The owner will have 30

days from receipt of the notice to complete the work required.  Failure of the owner to repair or replace the drive approach, including deteriorated or damaged drive culverts, after having been given proper notification, will be considered just cause for the County Engineer to remove the obstruction.  It will then be the responsibility of the property owner to obtain the necessary permit and re-establish the drive.  When deteriorated or damaged pipes present a danger, directly or indirectly to the traveling public, then immediate repair or replacement will be required.

Appendix B. – Access Permit Application

The following permit application must be filed any time a new driveway is to be constructed, when an existing driveway is to be upgraded, or when the use of the driveway changes.   The permit application fee shall be submitted along with the completed application to the Coshocton County Engineer.  The check shall be made out to the Coshocton County Engineer.

Appendix C. – Appeal and Variance Application

The following variance application must be filed any time an applicant requests relief from these regulations or feels that the County Engineer has made an error in any order, requirement, decision or determination in the enforcement of these regulations.  The variance application fee shall be submitted along with the completed application to the Coshocton County Engineer.  The check shall be made out to the Coshocton County Engineer.

# VARIANCE REQUEST
## ACCESS PERMIT APPLICATION
### COSHOCTON COUNTY ENGINEER'S OFFICE
23194 County Road 621, Coshocton, Ohio 43812
Phone - 740-622-2135 FAX - 740-623-6512

APPLICANT_____

ADDRESS _____STATE_____ZIP_____

PHONE NUMBER _____ FAX _____

LOCATION OF VARIANCE REQUEST – TOWNSHIP _____ADDRESS _____

VARIANCE REQUESTED _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

APPLICANT SIGNATURE: _____DATE: _____

DATE VARIANCE RECEIVED BY COUNTY: _____

DATE OF VARIANCE HEARING: _____

DATE OF VARIANCE ANSWER: _____

VARIANCE ANSWER _____

_____

_____

_____

_____

_____

_____

Appendix D. – Access Fee Permit Schedule

The fees for the Access Management Program, as established by the Coshocton County Commissioners, are as follows:

Access Permit, Minimum Volume Driveway ....................... . $25.00
Access Permit, Very Low Volume Driveway ....................... $50.00
Access Permit, Low Volume Driveway ............................$100.00
Access Permit, Medium Volume Driveway .......................…..$200.00
Access Permit, High Volume Driveway ........................... $500.00
Variance Request ...................................................... $100.00
Penalty for No Permit................................................ $250.00
Purposely Violated Rules............................................$500.00 per day

Appendix E. – Common Access Drive Regulations

The Coshocton County Engineer and the Coshocton County Regional Planning Commission support the concept of Common Access Drives provided the proper conditions exist. The access point must meet the spacing criteria for the particular driveway and road classification. Ingress and egress easements must be granted to all parties using the Common Access Drive. And, a Maintenance Agreement must be a recorded with the easements to memorialize the responsibilities for the maintenance and upkeep of the Common Access Drive.

The driveway will be classified based upon the combined projected traffic volume for all the users of said Common Access Drive.

The construction requirements for the Common Access Drive will be the same as for a single use drive with the same traffic volume.



# TRUMBULL COUNTY COMMISSIONERS

160 HIGH STREET, N.W.
WARREN, OHIO 44481-1093
330-675-2451
Fax: 330-675-2462

Commissioners
Mauro Cantalamessa
Frank S. Fuda
Daniel E. Polivka

Clerk
Paulette A. Godfrey

June 14, 2017

The following action was taken by the Board of Trumbull County Commissioners on June 14, 2017, and duly recorded in the Journal Volume 146, Page(s) 20829:

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

RE: APPROVE UPDATED SPECIAL HAULING PERMIT
APPLICATION FOR OVERWEIGHT VEHICLES TO
TRAVEL ON COUNTY ROADWAYS

**MOTION:**  Made by Mr. Polivka, seconded by Mr. Cantalamessa, to approve the updated SPECIAL HAULING PERMIT APPLICATION to be used by the Trumbull County Engineer's Office for the authorization of overweight vehicles requesting to travel upon Trumbull County Roadways. Said application is updated in accordance with Ohio Revised Code Section 4513.34; this action per the recommendation of Randy L. Smith, P.E., P.S., Trumbull County Engineer.
**NOTE:** Due to an influx in overweight vehicle traffic in conjunction with the legal reduction in weight limits tolerable for numerous roadways within Trumbull County, it has become necessary to revisit Trumbull County's overweight permitting application and process.

Yeas: Polivka, Cantalamessa, Fuda
Nays: None

## CERTIFICATION

I, Paulette A. Godfrey, Clerk of the Board of County Commissioners, Trumbull County, Ohio, do hereby certify that the foregoing is a true and correct copy of a Resolution adopted by the Board of Trumbull County Commissioners on June 14, 2017, and is duly recorded in their Journal Volume 146, Page(s) 20829.

_Paulette a. Godfrey, Pam_

Paulette A. Godfrey, Clerk/Interim Administrator
Board of County Commissioners

/pjvk

cc: County Engineer

**RECEIVED**

JUN 1 9 2017

RANDY L. SMITH, P.E., P.S.
TRUMBULL COUNTY ENGINEER

## Brad Perkins

| | |
|---|---|
| **From:** | Brad Perkins |
| **Sent:** | Monday, April 16, 2018 9:22 PM |
| **To:** | 'Steven J. Gerberry' |
| **Cc:** | Jack Simon; lorik@blairlatell.com |
| **Subject:** | RE: Access Points and Road Use for Logging |

Steve,

I would be glad to meet to discuss the information that I sent. I am in Atlanta this week, and will be out completely 2 weeks in May, so we probably need to look at something next week or the week after.

Also, I am a little confused by your sending me the County Commissioner's resolution. I understand that the County Commissioners approved the permit system, but I also know that it is the Engineers department that builds these things and presents them to the Prosecutor's office for review and the Commissioners for approval. So if the Engineer would decide that a change in the current system might be warranted, wouldn't he just follow that same process?

Thanks!

**Brad Perkins**
**Executive Director**
**Ohio Forestry Association**
**507 Main Street, Suite 200**
**Zanesville, Ohio 43701**
**Office: 888-38-TREES (888-388-7337)**
**Fax: 740-297-4153**
**Cell: 740-502-4215**
**Email:** Brad@ohioforest.org
**Web:** www.ohioforest.org

**From:** Steven J. Gerberry <hwgerber@co.trumbull.oh.us>
**Sent:** Friday, April 13, 2018 12:03 PM
**To:** Brad Perkins <Brad@ohioforest.org>
**Cc:** Jack Simon <hwsimon@co.trumbull.oh.us>; lorik@blairlatell.com
**Subject:** RE: Access Points and Road Use for Logging

Brad,

I have spoken to Matt Blair and he wanted me to let you know that it is his intention to schedule a meeting in the near future relating to topics in this email.

He also asked me to provide you the attached Trumbull County Commissioner's resolution for further clarification. You should note that the current permitting process was authorized by the Trumbull County Commissioners and approved by the Trumbull County Prosecutor's Office. Any change to the permitting process would require approval from the Trumbull County Commissioners as well as the Trumbull County Prosecutor's Office.
Again I want to point out that enforcement is handled by the Trumbull County Sheriff's Office.

1

Sincerely,

Steven J. Gerberry
Deputy Administrative Assistant &
Special Projects Coordinator
Trumbull County Engineer
650 North River Road
Warren, Ohio 44483
Office 330-675-2270
Fax  330-675-2642
E-mail  hwgerber@co.trumbull.oh.us

**From:** Brad Perkins [mailto:Brad@ohioforest.org]
**Sent:** Wednesday, April 11, 2018 8:54 AM
**To:** Jack Simon
**Cc:** Steven J. Gerberry
**Subject:** Access Points and Road Use for Logging

Good Morning Jack,

During my last visit, you mentioned that the road access points were the area where the most significant road damage was seen, not necessarily on the roadways themselves. I have attached a couple documents being used by another county to address this position. One is an "Access Policy Example", which covers access points for all activities for the entire county. The second one titled "Logging Operations SOP" specifically addresses logging operations. Trumbull County may already have an "Access" program; I'm not sure.

My office worked with the county engineer on the Logging Operations SOP. We ultimately didn't give it our full endorsement because we were concerned about their penalty clauses at the end of the document, but I feel it might have merit to consider some options like this for Trumbull County. One of the major provisions of this document is that the access point must be constructed to the Access Policy standards, and that any Temporary Access Points must be reclaimed to the engineers office satisfaction before it is vacated.

Another problem that sometimes comes up with loggers is that they load their trucks while the truck is sitting on the township or county road. This policy discourages that of course, but leaves it open to the possibility that if there is no option for an access for the truck to get off the road, the county could let them load on the road with proper safety precautions (signage, flaggers, etc).

We also know that it is difficult for a county or township to collect bond money or direct money from an individual to repair a damaged road because it is nearly impossible to prove that the road damage was caused by one entity when others are also using the road. It is not hard however, to prove damage to the road at an access point where there is only one or two entities using the access point.

**I would like to suggest that Trumbull County and its townships address their road use concerns by having a consistent fee for posted weight limit roads for all users ($50 or $100 for Annual Permit plus Commercial Liability plus continue to agree to be responsible for damages), then address the Access Point issues with another permit fee per access point (another $50 or $100). This would add consistency to road use permitting (trucks are trucks and weight is weight) while putting responsibility for the points of most damage on those using it (loggers, farmers, subdivision builders, miners, etc.).**

I would appreciate you thoughts and consideration on this, as I am still trying to help solve the differences between factions in Trumbull County as it pertains to road use. If you have interest in the preparation of the two documents I attached, I can put you in touch with the county engineer that developed them.

2

Also, I called and had a conversation with Matthew Blair yesterday to discuss a few points in the letters he sent me. He may call me tomorrow to continue that discussion. As always, I am open to discuss these concerns with anyone that is interested.

Thanks!

Brad Perkins
Executive Director
Ohio Forestry Association
507 Main Street, Suite 200
Zanesville, Ohio 43701
Office: 888-38-TREES (888-388-7337)
Fax: 740-297-4153
Cell: 740-502-4215
Email: Brad@ohioforest.org
Web: www.ohioforest.org

**Brad Perkins**

| | |
|---|---|
| **From:** | Brad Perkins |
| **Sent:** | Monday, July 2, 2018 2:18 PM |
| **To:** | 'hwgerber@co.trumbull.oh.us' |
| **Subject:** | Public Records Request |

Good afternoon Steve,

I would like to request some information pertaining to Trumbull County's Special Hauling Permits.
1. I would like a list of permits issued between 4/1/2018 and 7/2/2018 including the following information;
   a. Date issued
   b. Name of entity the permit was issued to
   c. Type of permit (Single Trip & Return, Continuing Operator, etc.)
   d. Materials listed to be hauled
   e. Route information
2. A list of permits that have been revoked between 7/2/2017 and 7/2/2018, with;
   a. Same info as requested in a – e above for item 1.
   b. Reason for revoking permit
3. A list of permits applied for between 7/2/2017 and 7/2/2018 that were not granted, with;
   a. Same info as requested in a – e above for item 1.
   b. Reason permit was not granted

Thanks!

Brad Perkins
Executive Director
Ohio Forestry Association
507 Main Street, Suite 200
Zanesville, Ohio 43701
Office: 888-38-TREES (888-388-7337)
Fax: 740-297-4153
Cell: 740-502-4215
Email: Brad@ohioforest.org
Web: www.ohioforest.org

**Brad Perkins**

| | |
|---|---|
| **From:** | Brad Perkins |
| **Sent:** | Monday, July 9, 2018 7:49 AM |
| **To:** | 'Steven J. Gerberry' |
| **Subject:** | RE: Public Records Request |

Thanks Steve. It is normal for a public records request to be referred to outside counsel?

Brad Perkins
Executive Director
Ohio Forestry Association
507 Main Street, Suite 200
Zanesville, Ohio 43701
Office: 888-38-TREES (888-388-7337)
Fax: 740-297-4153
Cell: 740-502-4215
Email: Brad@ohioforest.org
Web: www.ohioforest.org

**From:** Steven J. Gerberry <hwgerber@co.trumbull.oh.us>
**Sent:** Friday, July 6, 2018 11:55 AM
**To:** Brad Perkins <Brad@ohioforest.org>
**Subject:** RE: Public Records Request

Brad,

Your request has been referred to outside counsel.  A response is expected in a reasonable amount of time.

Steven J. Gerberry
Deputy Administrative Assistant &
Special Projects Coordinator
Trumbull County Engineer
650 North River Road N.W.
Warren, Ohio 44483
Office 330-675-2270
Fax 330-675-2642
E-mail hwgerber@co.trumbull.oh.us

**From:** Brad Perkins [mailto:Brad@ohioforest.org]
**Sent:** Monday, July 02, 2018 2:18 PM
**To:** Steven J. Gerberry
**Subject:** Public Records Request

Good afternoon Steve,

I would like to request some information pertaining to Trumbull County's Special Hauling Permits.
1. I would like a list of permits issued between 4/1/2018 and 7/2/2018 including the following information;
   a. Date issued

1

      b.   Name of entity the permit was issued to
      c.   Type of permit (Single Trip & Return, Continuing Operator, etc.)
      d.   Materials listed to be hauled
      e.   Route information

2. A list of permits that have been revoked between 7/2/2017 and 7/2/2018, with;
      a.   Same info as requested in a – e above for item 1.
      b.   Reason for revoking permit

3. A list of permits applied for between 7/2/2017 and 7/2/2018 that were not granted, with;
      a.   Same info as requested in a – e above for item 1.
      b.   Reason permit was not granted

Thanks!

Brad Perkins
Executive Director
Ohio Forestry Association
507 Main Street, Suite 200
Zanesville, Ohio 43701
Office: 888-38-TREES (888-388-7337)
Fax: 740-297-4153
Cell: 740-502-4215
Email: Brad@ohioforest.org
Web: www.ohioforest.org

2

**Brad Perkins**

| | |
|---|---|
| **From:** | Scyld D. Anderson <sanderson@isaacwiles.com> |
| **Sent:** | Friday, July 27, 2018 10:38 AM |
| **To:** | Brad Perkins |
| **Cc:** | Steven J. Gerberry (hwgerber@co.trumbull.oh.us); 'hwblair@co.trumbull.oh.us' |
| **Subject:** | Ohio Forestry Request for Information |
| **Attachments:** | Ltr to Ohio Forestry re Public Records Request of 07-02-18.pdf; Tables for Ohio Forestry Public Records Request of 07-02-18.pdf |

Dear Mr. Perkins,

Attached please find the response to your request for information dated July 2, 2018.

This will be the only form of delivery.

Scyld Anderson



Scyld D. Anderson
**Attorney at Law**
Two Miranova Place, Ste. 700
Columbus, OH 43215-5098
**t** 614.221.2121 • **f** 614.365.9516
**d** 614.220.5179
sanderson@isaacwiles.com
www.isaacwiles.com

**CONFIDENTIAL NOTICE:** This email and any attachments are for the exclusive and confidential use of the intended recipient. If you are not the intended recipient, please do not read, distribute or take action in reliance upon this message. If you have received this in error, please notify us immediately by return email and promptly delete this message and its attachments from your computer system. **WE DO NOT WAIVE ATTORNEY-CLIENT or WORK PRODUCT PRIVILEGE by the transmission of this message.**



**isaac wiles**
Isaac Wiles Burkholder & Teetor LLC

Scyld D. Anderson
In the Columbus Office
614-220-5179
sanderson@isaacwiles.com

July 27, 2018

Brad Perkins, Executive Director
The Ohio Forestry Association, Inc.
507 Main Street, Suite 200
Zanesville, Ohio 43701

*Via email only to Brad@ohioforest.org*

Dear Mr. Perkins:

This is in response to your request for information sent to the Trumbull County Engineer's office, via email to Steven J. Gerberry on July 2, 2018. As you may know, the office is under no obligation to create lists that do not already exist. See *State ex rel. White v. Goldsberry*, 85 Ohio St.3d 153, 154 (1999). However, my client was able to gather much of the requested information and is happy to oblige in this particular instance.

You asked for some information pertaining to Trumbull County's Special Hauling Permits, namely:

1. A list of permits issued between 4/1/2018 and 7/2/2018 including the following information
   a. Date issued
   b. Name of entity the permit was issued to
   c. Type of permit (Single Trip & Return, Continuing Operator, etc.)
   d. Materials listed to be hauled
   e. Route information
2. A list of permits that have been revoked between 7/2/2017 and 7/2/2018, with
   a. Same info as requested in a – e above for item 1
   b. Reason for revoking permit
3. A list of permits applied for between 7/2/2017 and 7/2/2018 that were not granted, with
   a. Same info as requested in a – e above for item 1
   b. Reason permit was not granted

---

**COLUMBUS OFFICE**
Two Miranova Place, Ste. 700
Columbus, Ohio 43215 | 614-221-2121
TOLL FREE: 800-337-0626

**CINCINNATI OFFICE**
300 E-Business Way, Ste. 200
Cincinnati, Ohio 45241 | 513-247-6163
BY APPOINTMENT ONLY

**WORTHINGTON OFFICE**
300 West Wilson Bridge Road, Ste. 250
Worthington, Ohio 43085 I 614-471-0085

WWW.ISAACWILES.COM

The information you requested appears on the enclosure that accompanies this letter, subject to the following caveats. The fee for all steel coil permits and all single trip permits was $50 each. The office has no list of materials or route information; to the extent that the information is available, it appears on the permits themselves.

In addition to the permit not granted to Golden Rule Timber as shown on the enclosure to this letter, issues arose surrounding two applications for annual supplier hauling permits submitted by William and Beth Spithaler. Both applications are identified to 5304 Davis Peck Road. Ultimately, they were not granted because Davis Peck Road was load posted. Because the road is load posted, annual supplier hauling permits are not appropriate for that location.

Respectfully,

/s/ Scyld D. Anderson

Scyld D. Anderson

cc:     Steven J. Gerberry
        Matthew J. Blair, Esq.

4823-2596-2350.1

## Annual Supplier Fleet 365 Day Permits 04/01/2018 to 07/02/2018

| Company Name | Permit Number | Issue Date | Expiration Date | Fees |
|---|---|---|---|---|
| Foust Leasing Inc | AF-003-2018 | 4/6/2018 | 4/6/2019 | 50 |
| Robert J. McBride (Bob's Tree Serv) | AF-004-2018 | 4/6/2018 | 4/6/2019 | 50 |
| Trumbull Cement Products Co. Inc | AF-005-2018 | 4/10/2018 | 4/10/2019 | 50 |
| Ztech Builders & Excavating | AF-006-2018 | 4/13/2018 | 4/13/2019 | 50 |
| Don R. Green Trucking LLC | AF-007-2018 | 4/23/2018 | 4/23/2019 | 100 |
| Hauser Services LLC | AF-008-2018 | 4/23/2018 | 4/23/2019 | 100 |
| Crooked River Trucking | AF-009-2018 | 4/25/2018 | 4/25/2019 | 100 |
| JGF Trucking | AF-010-2018 | 4/25/2018 | 4/25/2019 | 100 |
| Geauga Concrete, Inc. | AF-011-2018 | 4/25/2018 | 4/25/2019 | 100 |
| Schumer Trucking LLC | AF-012-2018 | 4/30/2018 | 4/30/2019 | 100 |
| SCD Management Inc | AF-013-2018 | 5/8/2018 | 5/8/2019 | 100 |
| Cirkle LLC / McCallister Concrete | AF-014-2018 | 5/8/2018 | 5/8/2019 | 100 |
| Arrowhead Services | AF-015-2018 | 5/14/2018 | 5/14/2019 | 50 |
| Young's Family Trucking | AF-016-2018 | 5/15/2018 | 5/15/2019 | 100 |
| Delliquadri | AF-017-2018 | 6/25/2018 | 6/25/2019 | 50 |
| Tim Garland Excavating | AF-018-2018 | 6/25/2018 | 6/25/2019 | 50 |

## Continuing Operator Fleet 90 Day Permits 04/01/2018 to 07/02/2018

| Company Name | Permit Number | Issue Date | Expiration Date | Fees |
|---|---|---|---|---|
| Jason Miranda (Chalker's Auction) | QF-008-2018 | 4/17/2018 | 4/17/2019 | 2020 |
| Advancing Eco Agriculture | QF-009-2018 | 4/19/2018 | 7/19/2018 | 520 |
| Triple M Lumber | QF-010-2018 | 5/4/2018 | 8/1/2018 | 520 |
| North Eagle LLC | QF-011-2018 | 5/7/2018 | 5/7/2019 | 2020 |

## Annual Steel / Aluminum Coil / Injection Mold Permits 04/01/2018 to 07/02/2018

| Company Name | Permit Number | Issue Date | Expiration Date |
|---|---|---|---|
| Steel Transport Inc. | 2018-024 | 4/23/2018 | 4/23/2019 |
| Ohio Intra Express | 2018-025 | 4/30/2018 | 4/30/2019 |
| Ohio Intra Express | 2018-026 | 4/30/2018 | 4/30/2019 |
| PI&I Motor Express | 2018-027 | 5/4/2018 | 5/4/2019 |
| PI&I Motor Express | 2018-028 | 5/14/2018 | 5/14/2019 |
| PI&I Motor Express | 2018-029 | 5/21/2018 | 5/21/2019 |
| Chadderton Trucking, Inc. | 2018-030 | 5/21/2018 | 5/21/2019 |
| AIM Integrated Logistics | 2018-031 | 6/14/2018 | 6/14/2019 |
| AIM Integrated Logistics | 2018-032 | 6/14/2018 | 6/14/2019 |
| PI&I Motor Express | 2018-033 | 5/31/2018 | 5/31/2019 |
| PI&I Motor Express | 2018-034 | 6/11/2018 | 6/11/2019 |

## Permits Revoked 07/02/17 to 07/02/2018

| Company Name | Permit Type | Permit Number | Issue Date | Exp. Date | Reason |
|---|---|---|---|---|---|
| AubMarLog Delivery Services | Continual Operator | QF-003-2018 | 2/8/2018 | 5/8/2018 | violated zoning |

## Permits Not Granted 07/02/17 to 07/02/2018

| Company Name | Permit Type | Permit Number | Issue Date | Exp. Date | Reason | Fee |
|---|---|---|---|---|---|---|
| Golden Rule Timber Management LLC | Continual Operator | QF-004-2018 | 2/23/2018 | 8/23/2018 | violated zoning | 0 |
| William Spithaler dba Gustavus Firewoods and Hardwoods LLC | Annual Supplier | | | | Load Posting issues - See Letter | 0 |
| Beth Spithaler dba Yoder Smoking Woods | Annual Supplier | | | | Load Posting issues - See Letter | 0 |

## Single Trip & Return Permits 04/01/2018 to 07/02/2018

| Company Name | Permit Number | Date |
|---|---|---|
| Southern Pines | 930 | 4/16/2018 |
| Miller Transfer | 931 | 4/23/2018 |
| Southern Pines | 932 | 5/4/2018 |
| Diamond Steel | 933 | 5/7/2018 |
| Southern Pines | 934 | 5/9/2018 |
| Southern Pines | 935 | 5/18/2018 |
| Southern Pines | 936 | 5/23/2018 |
| Diamond Steel | 937 | 6/1/2018 |
| Southern Pines | 938 | 6/6/2018 |
| Diamond Steel | 939 | 6/6/2018 |
| Chadderton Trucking | 940 | 6/7/2018 |
| Chadderton Trucking | 941 | 6/14/2018 |
| Robert Grim Welding Co. | 942 | 6/20/2018 |
| Robert Grim Welding Co. | 943 | 6/20/2018 |
| Chadderton Trucking | 944 | 6/26/2018 |
| Diamond Steel | 945 | 6/26/2018 |
| Prestress Transport | 946 | 6/28/2018 |
| Prestress Transport | 947 | 6/28/2018 |
| Southern Pines | 948 | 6/29/2018 |